Argued and submitted July 6, reversed and remanded August 16, 1983

## CITY OF PORTLÁND,
*Respondent on review,*

*v.*

## TUTTLE,
*Petitioner on review.*

(TC DA 217706-8108,
CA A24555, SC 29475)

668 P2d 1197

Richard L. Lonergan, Portland, argued the cause for petitioner on review. With him on the petition were Howard R. Lonergan and Clint A. Lonergan, Portland.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent on review.

JONES, J.

## JONES, J.

Defendant was charged with violating Portland City Code Section 14.08.140(b), "Interfering with a police officer." The trial court suppressed evidence on the ground that the police entry into the defendant's home was illegal but overruled defendant's demurrer to the complaint ruling that it sufficiently pled an offense. The trial court also denied the defendant's motion for a jury trial ruling that the offense was a violation and not a crime. The City appealed the suppression ruling and the defendant cross-appealed the ruling on the demurrer and the denial of a jury trial. The Court of Appeals reversed the order suppressing the evidence and remanded for further proceedings in light of its opinion, but the Court of Appeals affirmed the trial court's order overruling the demurrer and denial of a jury trial. We allowed review solely to determine if a violation of this code section constitutes a crime requiring the city to prove the defendant acted with a culpable mental state and thereby triggering the defendant's right to a jury trial under Oregon Constitution, Article I, Section 11, and ORS 136.001.

Portland City Code § 14.08.140(b) reads:

"It is unlawful for any person to refuse to leave the area of an arrest, custody or stop, or, having left that area, to reenter it, after being directed to leave that area by an individual whom the person knows to be a police officer."[1]

Portland City Code § 14.08.140(a) provides the following definitions:

"For the purpose of this section, the following definitions shall apply:

(1) 'Arrest' means to place a person under actual or constructive restraint for the purpose of charging him with an offense.

(2) 'Custody' means to place a person under actual or constructive restraint pursuant to a court order or for other lawful purpose.

---

[1] This ordinance was enacted with an emergency clause April 9, 1981, as a response to a Court of Appeals decision which struck down a previous "interfering with the police" ordinance as unconstitutional. *See, City of Portland v. Anderson,* 40 Or App 779, 596 P2d 603 (1979).

(3) 'Police officer' means any sworn member of the Bureau of Police.

(4) 'Stop' means a temporary restraint of a person's liberty, by a police officer lawfully present in any place, (i) when such officer reasonably suspects that such person is committing, or has committed, a criminal offense, or (ii) when such officer reasonably believes that such person is in need of attention pursuant to ORS 426.215 or ORS 426.460, or (iii) when such officer reasonably believes that such person is the subject of service of a valid court order.

(5) 'To leave the area of an arrest, custody or stop' means to physically move to a location not less than ten (10) feet extending in a radius from where a police officer is engaged in effecting an arrest, taking a person into custody, or stopping a person; the radius may be extended beyond ten (10) feet when a police officer reasonably believes that such extension is necessary because there exists a substantial risk of physical injury to any person."

Defendant demurred to the charging instrument complaining that it "does not state facts sufficient to constitute a crime." Alternatively, she contended that if the offense charged does constitute a crime, the City must prove the defendant acted with a culpable mental state and also provide her with a jury trial upon request. The City responded to the demurrer by "stipulating"[2] that the defendant was charged only with a violation and not a crime and on this basis the trial court overruled the defendant's demurrer and denied her a jury trial. The Court of Appeals affirmed the trial court on this issue.

The relevant facts are as follows: A Portland city police officer was dispatched to a disturbance at a Portland intersection. Witnesses at the scene reported that a car had been speeding in the area and that an altercation between the driver of the car and two other persons had occurred. A gold Mustang vehicle appeared on the scene and was pointed out to the officer as the suspect car. The suspect car abruptly stopped, backed up, reversed direction, and accelerated away from the scene with squealing tires. In the officer's view, this

---

[2] The City's "stipulation" is a misnomer. A stipulation requires acquiescence on the part of both parties before the court, not a unilateral action by one party as occurred in this case.

constituted driving in a "reckless manner" and he followed the car and saw it enter a private driveway.

The officer testified that he saw the driver, later identified as the defendant's son, get out of the car in the driveway and run down the driveway and around the corner of the house. Defendant's son failed to heed the officer's call to stop and the officer heard a door open and close and concluded that the defendant's son had entered the residence. The trial court made findings of fact as follows:

"1)   Ms. Tuttle is the mother of John Mongeon and was a resident of the home and was at home when the police entered on August 1, 1981.

"2)   The officer entered the home without a warrant and the burden of justifying the entry is on the State.

"3)   Without deciding the issues of fact raised by conflicting accounts of the witnesses, the officer had probable cause to cite, at most, for careless driving, a Class B traffic infraction committed in his presence.

"4)   The officer was never endangered or threatened by John Mongeon.

"5)   At most, Mongeon fled after parking his car in his driveway, disregarding the officer's command to stop.

"6)   The officer immediately entered the house without knocking or in any way attempting to gain permission to enter the home.

"7)   At the time of the entry, the officer knew the name of the registered owner of the vehicle and knew that the owner lived at that very address and had seen the driver sufficiently well to identify him in court, on the record.

"8)   The officer searched the dwelling for two to four minutes until he found Mongeon. During this time, Tuttle was following the officers from room-to-room yelling at them to get out of her house."

In response to the conduct described in finding of fact No. 8 above, the officer, who had been joined by a second

officer, arrested the defendant in her own home[3] charging her with interfering with the police, the allegation at issue here.[4]

## DOES PORTLAND CITY CODE § 14.08.140(b) REQUIRE THE CITY TO PROVE A CULPABLE MENTAL STATE?

■        A close reading of the ordinance reveals that the following elements must be proved in order for the City to obtain a conviction: (1) Any person (2) who unlawfully refuses (3) to leave the area of an arrest, custody or stop, or (4) having left that area, reenters it, (5) after being directed to leave that area (6) by an individual whom the person knows to be a "sworn member of the Bureau of Police."

The penalty for a violation of Portland City Code § 14.08.140(b) is found in § 14.08.020:

> "Violation of any provision of this code is punishable, upon conviction, by a fine of not more than five hundred dollars, or by imprisonment not exceeding six months, or both. However, no greater penalty shall be imposed than the penalty prescribed by Oregon statute for the same act or omission."[5]

The defendant has argued that the provisions of ORS 161.115(2)[6] should be applied to interpret the Portland City Council's intent in enacting Portland City Code § 14.08.140.

---

[3] In enacting Ordinance No. 151389, the Portland City Council made findings which mention no concern involving the interference with Portland police officers while making arrests in a private home. Section 1 provides in pertinent part:

"The Council finds:

"* * * * *

"That persons in the city are gathering or remaining in the immediate area in which officers of the Bureau of Police are attempting to lawfully detain or arrest persons, and verbally and physically interfering with such officers who are carrying out such official duties."

[4] At the suppression hearing the parties also stipulated that:

"The police entered Mrs. Tuttle's home. They were immediately met by Mrs. Tuttle, who demanded to know why there were there. Mrs. Tuttle followed the officers from room to room, yelling at them to get out of her house. Mrs. Tuttle continued this activity while John Mongeon was being arrested, and she was arrested for the crime charged, which is interfering with a police officer."

[5] We have found no comparable Oregon statute nor has any been cited to us which proscribes the same act or omission as Portland City Code § 14.08.140(b).

[6] ORS 161.115(2) provides:

"Except as provided in ORS 161.105, if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

We have grave concerns whether the statutory scheme codified at ORS 161.085 through 161.175 and entitled "Criminal Liability" applies to municipal ordinances.[7] However, we save the resolution of that question for another day as we find it only necessary to read the complaint in conjunction with the ordinance purportedly violated by the defendant to decide the issue in this case.

The complaint reads, in relevant part, that the defendant "did unlawfully refuse to leave the area of an arrest and custody after being directed to leave the area by an individual whom the defendant knew to be a police officer."

The culpable mental state of "knowledge"[8] is required by the language of the ordinance and explicit in the complaint. The defendant's demurrer was properly overruled by the trial judge because the complaint sufficiently pled a crime.[9]

In order for the defendant to "unlawfully refuse" to heed the order of a police officer, the defendant must knowingly refuse to obey the lawful order of the officer. Also explicit in the culpable mental state of "knowledge" is that the defendant knew that the order was being conveyed by a "sworn

---

[7] ORS 161.505 defines the term "offense" as three nouns: "either a *crime* or a *violation* or an *infraction.*" (Emphasis added.)

ORS 161.515(1) defines a "crime" as "an offense for which a sentence of imprisonment is authorized," while ORS 161.565 defines an "offense" as a "violation * * * if the offense is punishable only by a fine, forfeiture, fine and forfeiture or other civil penalty." The sentence for a "violation" is not to exceed $250, ORS 161.635(3).

ORS 161.505 also describes "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or *ordinance* of a political subdivision of this state." (Emphasis added.) However, the definitions and culpability requirements found in ORS 161.085 through 161.175 refer only to "violations" and "statutes," and at no point make reference to municipal "ordinances."

[8] Although we do not find it necessary in this case to determine if ORS 161.085 and its definitions apply to municipal ordinances, we nonetheless adopt for purposes of this case the definition of "knowingly" or "with knowledge" as found in ORS 161.085(8), which reads:

" 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that his conduct is of a nature so described or that a circumstance so described exists."

[9] The trial judge's order on demurrer states that the demurrer was overruled because "[t]he complaint does charge an offense - a violation." This is a case of the right ruling for the wrong reason.

member of the Bureau of Police," Portland City Code § 14.08.140(a)(3). Said in shorthand fashion, the defendant must knowingly refuse to obey a person known to be a Portland police officer under certain described circumstances. If, for example, the defendant knowingly refused to obey the instructions of an undercover Portland police officer whom the defendant did not know to be a police officer, there would be no violation of this ordinance. Also, if the defendant knowingly refused to obey the command of a Multnomah County Deputy Sheriff making an arrest in the City of Portland, there would be no violation of this ordinance as one element of knowledge on the part of the defendant must be that the defendant is refusing to obey the command of a "sworn member of the Bureau of Police."[10] Consequently, the culpable mental states of "knowingly refused" and "knew to be a sworn member of the Bureau of Police" must be proved by the City in order to find the defendant guilty. *Compare, State v. Emmich,* 39 Or App 769, 593 P2d 1281 (1979) (no culpable mental state was described in the statute and failure to prove a culpable mental state could result in only a conviction for a violation).

As we said in *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 103, 570 P2d 52 (1977), the prescribed penalty is generally regarded as the single most important criterion for determining whether the legislature, or in this case, the Portland City Council, intended an offense to constitute a crime. We have already noted that Portland City Code § 14.08.020 provides for a penalty of up to $500 or six months in jail upon conviction for a violation of § 14.08.140(b). We find that this penalty, coupled with the explicit and implicit culpable mental states indicates an intent by the Portland City Council to create a crime and not a violation or infraction.

## MAY THE DISTRICT ATTORNEY "DOWNGRADE" A CRIME TO A VIOLATION?

We have not found nor been cited to any authority which allows a district attorney to reduce the effect of a municipal ordinance, which by its elements and penalty is a crime, to a violation or infraction thereby reducing the City's burden of proof and also cutting off the defendant's right to a jury trial.

---

[10] Portland City government is divided into 24 major bureaus of which the Bureau of Police is one.

This is not the same situation as when a district attorney exercises his discretion to prosecute on a lesser crime or a lesser violation[11] because of concerns with witnesses or the non-availability of evidence to prove each and every element of the more serious crime beyond a reasonable doubt.

In the instant case the district attorney's action does not plead a lesser included offense or other offense but "stipulates" to an offense not enacted by the City. The district attorney possesses no authority to unilaterally reduce the possible penalty for a crime enacted by the City Council in order to create a different offense.

Reversed and remanded for trial.

---

[11] For example, ORS 475.992(2)(b) allows a district attorney to charge:

"Any person who delivers, for no consideration, less than one avoirdupois ounce of the dried leaves, stems and flowers of the plant Cannabis family Moraceae is guilty of a Class A misdemeanor, except that any person who delivers, for no consideration, less than five grams of the dried leaves, stems and flowers of the plant Cannabis family Moraceae is guilty of a violation, punishable by a fine of not more than $100."

"[L]ess than one avoirdupois ounce" and "less than five grams" could in some instances be exactly the same measurement and this statute provides the district attorney with discretion to downgrade a Class A misdemeanor to a violation.