Argued and submitted November 8, 1984, affirmed April 30, 1985

## STATE ex rel DWYER,
*Respondent on Review,*

*v.*

## DWYER,
*Petitioner on Review.*

(15-79-05972; CA A27164; SC S31012)

698 P2d 957

Stanley Cram, Eugene, argued the cause for petitioner on review. With him on the brief was Johnson, McKeever & Cram, Eugene.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief and memorandum of additional authorities were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

CARSON, J.

## CARSON, J.

The issue in this case is whether the Oregon Constitution guarantees the right to a jury trial in a "criminal" contempt proceeding brought because of defendant's failure to pay court-ordered child support.

Contempt proceedings were initiated by the state against defendant in behalf of his former wife. A show cause hearing was held before the court following the court's denial of defendant's oral request for a jury trial. The circuit court found that defendant was aware of a 1981 court order entered by stipulation requiring him to pay a reduced amount of child support, that he had made no child support payments, and that he deliberately chose to work only sporadically at odd jobs to earn enough money to just "get by." The trial court held defendant to be in contempt for his wilful failure to comply with that order for support. The trial court suspended imposition of sentence for a period of one year, during which time defendant was placed on probation, on the condition that he pay the monthly child support previously ordered by the court.

Defendant appealed, assigning as error the trial court's finding that his failure to pay the court-ordered child support was wilful and the denial of his request for a jury trial on state and federal constitutional grounds. The Court of Appeals affirmed the trial court, holding that the evidence supported the trial court's finding of wilful non-compliance with the child support order and that defendant had no right to a jury trial under Article I, section 11, of the Oregon Constitution or under the Sixth Amendment to the United States Constitution. *State ex rel Dwyer v. Dwyer,* 69 Or App 56, 684 P2d 15 (1984). Defendant petitioned to this court for review contending that Article I, section 11, of the Oregon Constitution guarantees the right to a jury trial in a criminal contempt proceeding.

It may be helpful to discuss briefly what is and what is not involved in this case:

### A. Direct and Indirect Contempt.

Defendant's contempt was not a *direct* contempt of court, defined as a contempt "committed in the immediate view and presence of the court or officer," which may be

punished summarily without affidavit or show cause hearing. ORS 33.030. Defendant's contempt was *indirect*.

### B.   Civil and Criminal Contempt.

■     Defendant was not punished for *civil* contempt, wherein the penalty is "imposed in order to compel compliance with an order and will end as soon as the respondent complies." *State v. Thompson,* 294 Or 528, 531, 659 P2d 383 (1983). That is the situation often described as a case wherein the defendant carries the key to his own jail cell. On the other hand, *criminal* contempt is defined as a case wherein the penalty "is imposed as punishment for a completed contempt that can no longer be avoided by belated compliance." *State v. Thompson, supra,* 294 Or at 531. By their nature, penalties for criminal contempt are determinate and those for civil contempt are indeterminate. The allowable punishments for criminal and civil contempts are stated in ORS 33.020(1) and (2), respectively, which provide:

"(1)   Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in ORS 33.010(1)(a) and (b), or in ORS 1.240(1), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100.

"(2)   In addition to the punishment provided for in subsection (1) of this section, the court or judge shall have power to constrain performance of any lawful order, judgment or decree of such court or judge, by imprisonment of the person failing or refusing to comply, until the order, judgment or decree has been complied with."

■     We are satisfied that defendant was convicted of "criminal" contempt because he was punished for his past failure to pay the child support ordered by the court in 1981. In these circumstances, the fact that the trial court suspended imposition of sentence and placed defendant on probation does not affect the characterization of defendant's penalty as punishment for criminal contempt.

Article I, section 11, of the Oregon Constitution provides, in relevant part:

"In all criminal prosecutions, the accused shall have the right to a public trial by an impartial jury * * *."

The thrust of defendant's argument is simple. If his contempt proceeding is a "criminal prosecution" within the meaning of Article I, section 11, then he is entitled to a jury trial. Defendant relies upon *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d (1977). In *Brown*, we considered the validity of law which purported to create nonpenal sanctions and procedures for the first violation, in that case the law against driving under the influence of intoxicants. We examined several indicia that might characterize an ostensible civil penalty proceeding as a "criminal prosecution" within the meaning of the constitutional guarantees applying to such prosecutions. We concluded that the type of conduct defined as the offense was not determinative, that the type or magnitude of sanction is significant but not conclusive, that collateral consequences generally are irrelevant, and that ultimately the decisive question is whether the judgment and sanction carry the "punitive significance" of "community condemnation" in the view of the lawmakers and the community whom they represent, and are meant to be so understood by the defendant. 280 Or at 102-07. We also stated that the applicable enforcement procedures, such as arrest, handcuffing and detention or bail, can be an indicator of this perceived punitive significance. *Id* at 108. We held that a first offense of driving a motor vehicle under the influence of intoxicants retained too many "penal charcteristics" not to be a "criminal prosecution" within the meaning of Article I, section 11, of the Oregon Constitution. Similarly, in *City of Portland v. Tuttle*, 295 Or 524, 668 P2d 1197 (1983), we applied the indicia of a "criminal prosecution" identified in *Brown* to a Portland city ordinance and concluded that the Portland City Council intended to create a crime and not a violation or infraction. 295 Or at 531.

Defendant urges this court to apply the *Brown* indicia to a criminal contempt proceeding brought pursuant to ORS 33.010 to 33.150 to punish a defendant for failure to obey an order for the payment of child support. It very well may be that if those indicia were applied to a criminal contempt

proceeding, it would be characterized as a "criminal prosecution." Defendant's argument, however, fails to deal with the historical fact that when the constitution was adopted, punishment for contempt was not considered a "criminal prosecution" as that term was used in Article I, section 11. At that time, also, equitable orders to pay child support were known and punishable by contempt, so we need not consider the question whether there are offenses for which this method of prosecution could not be used without complying with the constitutional guarantees.

Contemporaneously with the adoption of Article I, section 11 in 1857,[1] Oregon territorial laws provided for contempt proceedings which authorized courts of chancery to fine and imprison contemnors for violating the court's process, rules or orders. *See, e.g.,* General Laws of Oregon, Practice-Chancery § 50, p 195 (1851). Territorial District Courts and the Supreme Court were authorized by statute to hold an officer of the court in contempt if the officer had been directed to serve a summons but had neglected or refused to do so. General Laws of Oregon, Practice-District and Supreme Courts § 5, p 200 (1851). The latter statute provided that "the court shall adjudge [the contemnor] guilty of a contempt." General Laws of Oregon § 5, p 200 (1851).

In 1862, the punishment of contempt was provided for in a separate section of the Civil Code, under Chapter VII, entitled "Special Proceedings." General Laws of Oregon, ch 7, § 640-54, pp 311-14 (Civ Code) (Deady 1845-1864). The language in sections 640-54 of Chapter VII which provided for the punishment of contempts in 1862 has continued to be the law in Oregon, with only minor modifications, from 1862 until its present codification at ORS 33.010 to 33.150. Section 649 of the 1862 Civil Code virtually is identical to ORS 33.100 which provides:

"Upon the evidence so taken, *the court or judicial officer shall determine whether the defendant is guilty of the contempt charge,* and if determined to be guilty, shall sentence

[1] The Oregon Constitution was framed by a convention of 60 delegates meeting in August and September of 1857. In November 1857, it was submitted to and adopted by the voters of Oregon. It was approved and went into effect on February 14, 1859 by the act that declared Oregon a state.

114

him to be punished as provided in ORS 33.020." (Emphasis supplied.)

At least from the time of Blackstone, the English courts denied the right to a jury trial for contempt of court. 4 Blackstone, Commentaries *285-87; 3 Holdsworth, History of English Law 391-94 (5th ed 1942). Recognizing the weight of English precedent, courts in the United States uniformly adopted the summary disposition of criminal contempts. Goldfarb, The Contempt Power 169 (1963).

We recognize that historical scholarship has cast considerable doubt upon the traditional rationales for the contempt power generally and for the denial of a jury trial in contempt proceedings specifically. *See e.g.,* Goldfarb, *supra,* at 1-45; Fox, The History of Contempt of Court 5-43 (1927); Thomas, Problems of Contempt of Court 5 (1934).[2] Goldfarb, Fox, Thomas and others convincingly explain that establishing a contempt power without the right to a jury trial was the result of historical accident rather than *stare decisis.* They maintain that Blackstone erroneously reported an unpublished opinion in *The King v. Almon* (1765) to extend the summary contempt power which had been limited to direct criminal contempts to indirect and civil contempts as well. Nonetheless, we are persuaded that even if Blackstone's statement of the common law was based upon an erroneous assumption, by 1857 it was firmly established in England and the United States that contempts of court were disposed of without jury trials.

We are satisfied that the framers of our constitution contemplated this well-established principle of common law when they drafted Article I, section 11. Thus, ORS 33.100, which provides that the court or judicial officer determines a defendant's guilt on a contempt charge, is wholly confined within an historical exception that was well-established when the Oregon constitutional guarantee of a jury trial in all criminal prosecutions was adopted, and the jury trial guarantee in Article I, section 11, demonstrably was not intended to

[2] After a thorough examination of the common law development of summary contempt power, Goldfarb surmises that Blackstone relied upon personal correspondence with then Presiding Judge Wilmot to construct his view of the broad reach of contempt power. Such broad view was subsequently incorporated into Anglo-American common law. Goldfarb, The Contempt Power 16-19 (1963).

reach punishment for indirect criminal contempt for violation of court orders to pay child support. *See State v. Robertson,* 293 OR 402, 412, 649 P2d 569 (1982).

■       Defendant next contends that the denial of a jury trial in a criminal contempt proceeding for failure to pay court-ordered child support is fundamentally unfair because his conduct equally could have been punished as criminal non-support under ORS 163.555.[3] Defendant states that he would have been entitled to a jury trial for violation of that Class C felony. Defendant's contention is answered by ORS 33.130 which provides:

> "[P]ersons proceeded against for contempt are also liable to indictment for the same misconduct, if it is an indictable offense, * * *."

This language also has survived virtually unchanged from Chapter VII, section 652 of the Civil Code of 1862. The presence of this statutory language in 1862 suggests that contemporaneously with the adoption of Article I, section 11, the framers were cognizant of and approved this anomaly in the law of contempt.[4]

It is significant that the court order for child support in the instant case is the type of order or decree that courts of equity historically enforced by contempt proceedings. *See, e.g., Ex Parte Gordan,* 95 Cal 374, 30 P 561 (1892); *Stonehill v. Stonehill,* 146 Ind 445, 45 NE 600 (1896). From the earliest records of law in Oregon, courts of equity had the authority to order child support from the non-custodial parent when a marriage was dissolved or declared void. *See, e.g.,* General Laws of Oregon, ch 2, § 7, p 496 (Civ Code) (1854); General Laws of Oregon, ch 5, § 497(2), p 272 (Deady 1845-1864). The

---

[3] ORS 163.555 provides, in relevant part:

"(1)  A person commits the crime of criminal nonsupport if, being the parent, lawful guardian or other person lawfully charged with the support of a child under 18 years of age, born in or out of wedlock, he refuses or neglects without lawful excuse to provide support for such child.

"* * * * *

"(3)  Criminal nonsupport is a Class C felony."

[4] We have previously held that a conviction for indirect criminal contempt is a criminal prosecution for the purposes of the statutes governing double jeopardy. *State v. Thompson,* 294 Or 528, 659 P2d 383 (1983).

method of enforcing decrees and orders of courts of equity was "by punishing the party refusing or neglecting to comply therewith, as for contempt." General Laws of Oregon, ch 5, § 402, p 249 (Deady 1845-1864).

■     We point out that the Oregon Revised Statutes are replete with laws authorizing contempt proceedings for a wide variety of purposes from punishing non-compliance with orders requiring disclosure of public records (ORS 192.490(1)) to violations of orders declaring strikes by public employees unlawful (ORS 243.726(4)). We express no opinion about whether novel problems can be brought within the purview of traditional criminal contempt proceedings and thereby avoid a jury trial. Our decision today is limited to the enforcement by criminal contempt of orders or decrees that would have been within the purview of common law or equity courts in 1859.

As to such orders, a criminal contempt proceeding initiated pursuant to ORS 33.010(1)(e) is not a "criminal prosecution" within the meaning of Article I, section 11.[5]

---

[5] Although it is not clear from the record, we assume that the contempt proceeding against defendant was initiated pursuant to ORCP 78D. because it was initiated by a motion in the same action in which the order for child support had previously issued. ORCP 78D. provides:

"D.     As an alternative to the independent proceeding contemplated by ORS 33.010 through 33.150, when a contempt consists of disobedience of an injunction or other judgment or order of court in a civil action, citation for contempt may be by motion in the action in which such order was made and the determination respecting punishment made after a show cause hearing. Provided however:

"D.(1)  Notice of the show cause hearing shall be served personally upon the party required to show cause.

"D.(2)  Punishment for contempt shall be limited as provided in ORS 33.020.

"D.(3)  The party cited for contempt shall have right to counsel as provided in ORS 33.095."

ORCP 78D. incorporates by reference ORS 33.020 (punishment for contempt) and ORS 33.095 (right to counsel), but it does not specifically incorporate ORS 33.100 (determination of guilt is by the court). There is no reason to believe, however, that the legislature intended to provide defendants prosecuted for contempt pursuant to ORCP 78D. with a jury trial. The Commentary to ORCP 78D. states: "Section D. is new and authorizes a motion procedure for contempt, as an independent proceeding under ORS chapter 33. The motion practice was the traditional chancery procedure." Merrill, Oregon Rules of Civil Procedure: A Handbook 164 (1981).

Defendant is not entitled to a jury trial under the Oregon Constitution.

The decision of the Court of Appeals is affirmed.