Argued and submitted September 3, affirmed November 5, 1985

STATE ex rel HATHAWAY,
*Respondent on review,*

*v.*

HART,
*Petitioner on review.*

(CC D8201-66193; CA A24959; SC S31364)

708 P2d 1137

Clint A. Lonergan, argued the cause for petitioner on review. With him on the petitions were Richard L. Lonergan and Howard R. Lonergan, Portland.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent on review.

JONES, J.

## JONES, J.

The issue in this case is whether, under Oregon statutes and the Oregon Constitution, the defendant is entitled to a jury trial in a criminal contempt proceeding for violation of a restraining order entered pursuant to the Abuse Prevention Act, ORS 107.700 to 107.720.

■ We allowed review to consider this issue in light of *State ex rel Dwyer v. Dwyer,* 299 Or 108, 698 P2d 957 (1985). In *Dwyer,* we held that a defendant charged with criminal contempt for failing to pay court-ordered child support was not entitled to a jury trial. We based our holding on "the historical fact that when the constitution was adopted, punishment for contempt was not considered a 'criminal prosecution' as that term was used in Article I, section 11." 299 Or at 113. We limited *Dwyer* to criminal contempt proceedings for violations of court orders or decrees that would have been within the purview of common law or equity courts in 1859. Today, we hold that a defendant in a criminal contempt proceeding for violating a restraining order under the Abuse Prevention Act is not entitled to trial by jury.

In January 1982, a restraining order was entered in Multnomah County under the provisions of the Abuse Prevention Act restraining defendant Hart from "molesting, bothering or interfering" with Kay Marie Hathaway. In April 1982, the state initiated contempt proceedings on behalf of Ms. Hathaway. She complained that defendant had broken into her house and assaulted her, in addition to other acts of abuse. The trial court ordered defendant to show cause why he should not be held in contempt for failure to obey the restraining order.

The court held a show cause hearing after denying defendant's motions for jury trial. The trial court found the proceeding to be one for civil contempt, not criminal contempt,[1] and found defendant guilty on four counts of contempt: Counts I and IV beyond a reasonable doubt, and

---

[1] The court's order regarding defendant's motions stated in part:

"Defendant's Motion for Trial by Jury and the Right of a Criminal Defendant and his arguments thereon were directed to the defendant's belief that this proceeding would be a criminal contempt proceeding and the court FINDS that this proceeding is a civil contempt proceeding."

Counts II and III by a preponderance of the evidence.[2] The court sentenced defendant to 30 days' imprisonment on Count II, and postponed sentencing on the remaining three counts pending a presentence investigation. In December 1982, the trial court suspended sentence on Count II, and placed defendant on one-year probation for the remaining three counts, to run concurrently.

Defendant appealed to the Court of Appeals, assigning as error the trial court's ruling that the contempt proceeding was one for civil contempt, the admission of testimony about incidents not contained in the charging instrument, and the court's ruling that defendant was not entitled to a jury trial on state and federal constitutional grounds. The Court of Appeals affirmed in part and reversed in part. The Court of Appeals held that the trial court erred in characterizing the proceeding as one for civil contempt. The court concluded that criminal contempt is a "criminal action" as defined by ORS 131.005(6),[3] and that because it is a criminal action, defendant was entitled to the procedural safeguards set forth in ORS 136.415 and 136.567.[4] The court held that with respect to Counts II and III defendant had been deprived of the protection that guilt be proved beyond a reasonable doubt. The judgments on those two counts were reversed.[5]

The Court of Appeals further held that although a criminal contempt proceeding is a "criminal action" invoking statutory procedural safeguards, criminal contempt is not a

---

[2] Count I charged that defendant had assaulted Ms. Hathaway, Counts II and III charged that defendant had harassed Ms. Hathaway during her lunch break and while she was driving home, and Count IV charged that defendant had thrown rocks through the window of a neighbor's house while Ms. Hathaway was inside.

[3] ORS 131.005(6) provides:

" 'Criminal action' means an action at law by means of which a person is accused and tried for the commission of an offense."

[4] ORS 136.415 provides:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved. In case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to be acquitted."

Under ORS 136.567, defendant is entitled to secure the attendance of witnesses.

[5] Under ORAP 10.05 we consider whether the Court of Appeals correctly reversed the trial court rulings on Counts II and III, although the state did not cross-petition this court on that issue. *Blair v. Mt. Hood Meadows Dev. Corp.*, 291 Or 703, 634 P2d 241 (1981).

"criminal prosecution" within the meaning of that term as used in Article I, section 11, of the Oregon Constitution, which provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed * * *."

Therefore, the Court of Appeals held that defendant was not entitled to a jury trial.[6]

The defendant argued, and the Court of Appeals correctly held, that the proceeding at issue here was for criminal and not civil contempt. As we said in *State v. Thompson,* 294 Or 528, 531, 659 P2d 383 (1983), "a penalty for contempt [is] 'civil' when it is imposed in order to compel compliance with an order and will end as soon as the respondent complies, and [is] 'criminal' when it is imposed for a completed contempt that can no longer be avoided by belated compliance." *See State ex rel Dwyer v. Dwyer, supra,* 299 Or at 111; *In re Hanks,* 290 Or 451, 458 n 10, 623 P2d 623 (1981). However, labeling a contempt proceeding criminal does not answer the question whether a defendant in such a proceeding is entitled to a jury trial.

We first consider defendant's statutory claims to a jury trial and other procedural rights before reaching his Article I, section 11, constitutional claim. "[T]o the extent that statutory law disposes of a case a court has no occasion to reach a constitutional issue." *Thompson,* 294 Or at 531; *see, e.g., State v. Spada,* 286 Or 305, 592 P2d 815 (1979); *State v. Smyth,* 286 Or 293, 593 P2d 1166 (1979). Defendant asserts that persons charged with criminal contempt are entitled to the procedural protections that ORS 136.001 to 136.695 grant to defendants in criminal actions, including the right to a jury, ORS 136.001,[7] because criminal contempt is a "criminal

---

[6] The court also held that error, if any, committed by the trial court in connection with the admission of evidence of violations other than those charged, was harmless. We agree.

[7] ORS 136.001 mirrors the precise language of Article I, section 11, including the reference to "criminal prosecutions." Other criminal procedure statutes, *e.g.,* ORS 131.005 (challenge to jury panels), refer to "criminal action." We conclude that the legislature used "criminal prosecutions" in ORS 136.001 because the phrase repeated the constitutional language, and it did not intend to distinguish "criminal prosecutions" from "criminal actions." The Court of Appeals incorrectly relied on this supposed distinction between criminal "actions" and "prosecutions" in deciding that defendant had no right to a jury trial under ORS 136.001.

action," ORS 131.005(6). ORS 131.005(6) defines a "criminal action" as *"an action at law* by means of which a person is accused and tried for the commission of an *offense."* (Emphasis added.)

The Abuse Prevention Act was not designed by the legislature to be enforced by normal criminal procedures as actions at law. Rather, the legislature intended the Act "to stengthen legal protection for persons threatened with assault by a present or former spouse or a cohabitant." *Nearing v. Weaver,* 295 Or 702, 704, 670 P2d 137 (1983). Under the Act, the court issues *ex parte* restraining orders "upon a showing that there is an immediate and present danger of abuse to the petitioner." ORS 107.718(1). The court order, which can last one year, may require that either or both parties "be restrained from molesting, interfering with or menacing the other" party. ORS 107.718(1)(c). The order also may provide for temporary child custody and may require the respondent to move from petitioner's residence. ORS 107.718(1)(a) and (b).[8]

Finally, the Act, by using the language of ORS 33.020, authorizes a court to punish contempt of its order by a fine not to exceed $300 or imprisonment not to exceed six months. In other words, the essence of the Abuse Prevention Act is to prevent acts of family violence through restraining orders and, if the court orders are disobeyed, to provide legal sanctions for the violations of the orders because ordinary criminal actions at law were found to be inadequate to achieve this desired legislative result.[9]

---

[8] By 1984, 49 states and the District of Columbia had statutes similar to the Abuse Prevention Act. *See* Lerman, *A Model State Act: Remedies for Domestic Abuse,* 21 Harv J on Legis 61, 62-63 n 1 (1984). At least 24 states use contempt proceedings to punish restraining order violations. *See* Note, *Duties and Enforcement Mechanisms For the Rights of Battered Women,* 16 Suffolk U L Rev 937, 956 n 81 (1982).

[9] The problems with criminal prosecution for acts of domestic violence are well documented. "Although criminal assault and battery laws prohibited interspousal violence, attitudinal and structural barriers to both arrest and prosecution rendered the statutes largely ineffective" against domestic violence. Gottlieb & Johnson, *Reform in Kansas Domestic Violence Legislation,* 31 U Kan L Rev 527, 528 (1983). "Criminal acts of spouse abuse went unreported, underprosecuted, and undeterred." *Id.* at 531; *see also* Pence, *The Duluth Domestic Abuse Intervention Project,* 6 Hamline L Rev 247, 248-50 (1983); Note, *Duties and Enforcement Mechanisms, supra,* 16 Suffolk U L Rev at 940-45; Note, *Domestic Relations: Oklahoma's Protection From Domestic Abuse Act,* 36 Okla L Rev 349, 350 (1983); Note, *Restraining Order Legislation for Battered Women: A Reassessment,* 16 USFL Rev 703, 705 (1982).

The sanctions for contempt were to provide legal teeth for enforcement of court orders against violators and not to replace normal criminal prosecutions. Criminal charges for assaulting a family member and other such domestic acts of violence can still be prosecuted by information or indictment, and those cases proceed with standard due process protections, including the right to a jury trial. Of course, a defendant is protected from being punished twice for the same conduct if a court imposes contempt sanctions and the defendant is subsequently prosecuted in a criminal law action. *See State v. Thompson, supra.*

## STATUTORY RIGHT TO A JURY TRIAL

The defendant asserts that because ORS 131.005(6) refers to a person being tried for the commission of an offense, he is entitled to a jury trial under ORS 161.505, which defines an "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state." He then claims that ORS 33.024, providing for six months' imprisonment or a $300 fine, must fall within the definition of an offense. The weakness of that argument is that ORS 161.505 is not the only statute defining an offense. Although ORS 161.505 gives one definition of an offense, not all offenses in our statutes provide for an imprisonment sanction or entitle a defendant to a jury trial. Under ORS 161.565, an offense may be a violation if it is so designated in the statute defining the offense or if the offense is punishable only by a fine, forfeiture, suspension or other civil penalty. An offense is an infraction under ORS 153.270 if it is so designated in the statute defining the offense and "if the offense is punishable only by fine, forfeiture, suspension * * * or other civil penalty." ORS 153.240 specifically provides that the trial of any infraction shall be by the court without a jury. The Abuse Prevention Act's inclusion of an imprisonment sanction does not entitle the defendant to a jury trial under ORS 131.005(6). Had the legislature chosen to provide a jury trial for contempt proceedings under this Act, it could have done so.

The court's authority to punish for criminal contempt arises from a different source than its authority to punish for an ordinary crime. The latter authority is found

only in legislative enactment. The former is not only statutory, *see* ORS 1.020,[10] but also "is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Ex Parte Robinson,* 86 US (19 Wall) 505, 510, 22 L Ed 205 (1873). The court's enforcement of its contempt power occurs in a unique proceeding.

Long before the Abuse Prevention Act was enacted, this court consistently held that criminal contempt is *"quasi-criminal,"* *State ex rel Bassett v. Bassett,* 166 Or 628, 638-39, 113 P2d 432 (1941) (emphasis added); *State ex rel. v. Mount,* 139 Or 694, 700, 10 P2d 606 (1932). Subsequent to this legislation we have stated in a summary contempt proceeding that "this is an order of contempt rather than a criminal conviction," *State ex rel Spencer v. Howe,* 281 Or 599, 606, 576 P2d 4 (1978). We conclude that the legislature intended to leave criminal contempts as unique proceedings, *see Bassett,* 166 Or at 638. The defendant in a criminal contempt proceeding is tried for the violation of a court order and is not being tried in "an action at law" as set forth in ORS 131.005(6).

■ Historically, courts tried criminal contempt proceedings without juries, *see Dwyer,* 299 Or at 114, and the burden of proof in contempt proceedings was, and is, that the violation of the order be proved by clear and convincing evidence. *State ex rel Oregon State Bar v. Lenske,* 284 Or 23, 26, 584 P2d 759 (1978); *State ex rel v. Stewart,* 163 Or 585, 601, 96 P2d 220 (1940); *State ex rel v. Small,* 49 Or 595, 603, 90 P 1110 (1907); *see* Rapalje, A Treatise on Contempt 111, § 86 (1884) ("It is well settled that a defendant must be clearly shown to be in contempt before the court will entertain an application which seeks to punish him"). To the extent that they articulate a lesser standard, we overrule *State ex rel McKee v. McKee,* 237 Or 583, 392 P2d 645 (1964), and *State ex rel. v. Blackwell,* 181 Or 157, 164, 179 P2d 278, 179 P2d 1023 (1947). Defendants in

---

[10] ORS 1.020 provides:

"For the effectual exercise of the powers specified in ORS 1.010, the court may punish for contempt in the cases and the manner provided by statute."

criminal contempt proceedings are given procedural protections under ORS 33.010 to 33.150, but those protections do not include all the rights that defendant claims.[11]

Because the burden of proof in criminal contempt proceedings is to prove the contempt by at least clear and convincing evidence, we affirm the Court of Appeals' reversal on Counts II and III, which were proved only by a preponderance of the evidence.

## CONSTITUTIONAL RIGHT TO A JURY TRIAL

We now address the defendant's constitutional argument that he is entitled to a jury trial under Article I, section 11, of the Oregon Constitution, because the acts he committed in violating the restraining order were "traditional criminal acts."

Defendant here attempts to distinguish *State ex rel Dwyer v. Dwyer, supra,* which held that the defendant had no constitutional right to a jury trial in a criminal contempt proceeding. In *Dwyer,* the criminal contempt conviction was for failure to pay child support, not a traditional criminal act. The legislature did not make nonsupport subject to criminal prosecution until 1907. Here, the defendant argues that he is entitled to a jury trial because the acts he committed in violation of the restraining order were traditional criminal acts, burglary and assault. He asserts that "[a]t common law and at the time of the adoption of the Oregon Constitution, one could not be imprisoned for contempt by committing a traditional criminal act."

Defendant's historical claim is faulty. For centuries courts of equity have been empowered to punish traditional criminal acts if those acts violated a valid court order. One noted authority on contempt, Cromwell H. Thomas, wrote:

"It has long been one of the maxims of equity that courts of equity jurisdiction have no authority with reference to

---

[11] ORS 33.040 to 33.150 state the defendant's procedural protections in a criminal contempt proceeding, which include the right to counsel in indirect contempts, the right to appointed counsel if "the alleged contemnor is indigent and the proceedings may result in any incarceration," ORS 33.095(1) and (2), the right to bail, ORS 33.080, and the requirement that "the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer," ORS 33.040.

criminal questions, and it is true that equity courts do not try criminal cases, as such, in the ordinary manner. But equity courts, because of their peculiar origin and the *in personam* character of their orders and decrees, have long assumed the power to issue orders, upon the application of private parties, restraining the commission of actual or threatened action whereby the petitioner might suffer irreparable damage. Many of the acts restrained were unlawful and also constituted criminal offenses, so that *the courts actually did punish criminal offenses, not as such, but as violations of the court's order."* Thomas, Problems of Contempt of Court 37 (1934) (emphasis added; citations omitted).

Stewart Rapalje, the author of another classic treatise on contempt, wrote that the power of equity courts to punish for contempt was considered essential because "it [is] in many cases the only way in which the decree of a court of equity can be enforced, the violation of an injunction, or the doing of a forbidden act, prevented." Rapalje, *supra,* at 4. At common law, a defendant was not entitled to a jury trial although the act constituting the criminal contempt was also a crime. *See, e.g., Dale v. State,* 198 Ind 110, 150 NE 781 (1926); *Manderscheid v. District Court,* 69 Iowa 240, 28 NW 551 (1886); *State v. Doty,* 32 NJL 403, 90 Am Dec 671 (1868).

Defendant's reliance on the type of acts violating the restraining order is misplaced. Under defendant's analysis, violation of the restraining order by a traditional criminal act entitles a person to a jury trial, while violation of the same restraining order by a noncriminal act would not entitle a person to a jury trial. We see no valid distinction between criminal contempt proceedings based on whether the order was violated by a criminal or noncriminal act. The essence of criminal contempt is the violation of the court's order, not the nature of the act that violated the order.

The real issue is whether criminal contempt proceedings for restraining order violations were "a well-established historical exception" to the constitutional requirement of a jury trial, as we found violations of court-ordered child support to be in *Dwyer,* 299 Or at 114. The framers of the Oregon Constitution in 1857 could not have known about restraining orders under the Abuse Prevention Act enacted in 1977; however, we may use the historical record for analogies to restraining orders under the Act.

The Abuse Prevention Act restraining order is analogous to traditional injunctions preventing spouses from harassing each other during a pending divorce suit.[12] Historically, courts of equity could separate spouses before a final divorce if one spouse was in imminent physical danger from the other spouse.[13] Courts could punish violations of such orders through contempt proceedings,[14] and by 1859 "it was firmly established in England and the United States that contempts of court were disposed of without jury trials." *Dwyer,* 299 Or at 114.

Both the traditional domestic relations injunctions and Abuse Prevention Act restraining orders protect persons from imminent domestic violence and provide for temporary child custody. Under Oregon's current Act, a court may restrain a spouse when no divorce between the parties is pending, or when the parties are not married. The Act's broader scope fills a gap in the coverage of traditional injunctions while achieving the same fundamental purpose, protecting familes from disruption or domestic violence.

The framers of the state constitution would have understood proceedings such as the one at issue here as an

---

[12] Oregon statutes, now found at ORS 107.095(1), have long allowed a trial court in divorce proceedings to provide by order "for the freedom of the wife from the control of the husband during the pendency of the suit." General Laws of Oregon § 496.3, p 126 (Civ Code Deady 1862).

Courts granted injunctions to protect a spouse from "interference" pending divorce actions, *see Lyon v. Lyon,* 102 Ga 453, 460, 31 SE 34 (1897); *McGill v. McGill,* 19 Fla 341, 350 (1882). Courts also granted injunctions to protect property pending divorce actions, *see, e.g., Wright v. Wright,* 3 Tex 168 (1848); *Kirby v. Kirby,* 1 NY Ch (Paige) 261 (1828); *see generally* 2 Bishop, Commentaries on the Law of Marriage and Divorce 422-24, §§ 502-04 (1873); 2 Story, Equity Jurisprudence 297, § 955 (1853).

[13] *See Laurie v. Laurie,* 9 NY Ch (Paige) 233 (1841) (a court of chancery may enjoin husband pending divorce from carrying away children of marriage; injunction may restrain husband from annoying or following his wife and children).

Courts of equity would grant decrees of separation when one spouse had a "reasonable apprehension of personal injury," *Westmeath v. Westmeath,* 2 Haggard's Eccl 61, 72 (1827); *see Harris v. Harris,* 2 Phillim 204 (1813).

[14] *See, e.g., Blunk v. Walker,* 206 Iowa 1389, 222 NW 358 (1928) (upholding contempt conviction when husband violated order not to interfere with wife pending divorce; husband assaulted wife). *Cf. In re Gill,* 20 Wis 719 (1866) (contempt conviction for failing to pay temporary alimony pending divorce; Wisconsin statute authorized court to "restrain [husband] from interfering with [wife's] personal liberty"); *see generally* Clark, Law of Domestic Relations 392-94, § 13.6 (1968).

exception to the coverage of Article I, section 11. Therefore, defendant was not and is not entitled to a jury trial.

The decision of the Court of Appeals is affirmed.