Argued and submitted October 19, affirmed December 12, 1990, reconsideration denied February 13, petition for review pending 1991

LOVEJOY SPECIALTY HOSPITAL, INC.,
*Respondent,*

*v.*

ADVOCATES FOR LIFE, INC.,
Operation Rescue, Inc., Randy Craig Alcorn,
Rosemary M. Belezos, Brian W. Clowes,
Kathleen K. Clowes, Paul C. DeParrie,
Russell David DeVoss, Judy L. Hager, Franklin L. Hicks,
Judith Anne Quiring, Priscilla J. Martin,
James J. Miller, Robert William Morton,
Howard Romano, Rachelle R. Shannon, John Robert Snyder,
Kathleen M. Stewart, Phillip Tussing
and James Marshall Tuttle,
*Defendants,*

Andrew A. BURNETT;
Sean Robert Hahn; Catherine Ramey; Dawn M. Stover
and Linda J. Wolfe, Norman Norquist;
Kathy Gorsline and Marion Hite,
*Appellants.*

(A8907-03773; CA A63666)

802 P2d 684

Norman L. Lindstedt and Meline Mansell, Portland, argued the cause for appellants Burnett, Ramey, Wolfe, Norquist and Hite. With them on the briefs was Lindstedt & Buono, P.C., Portland.

Harlan Edward Jones, Portland, argued the cause for respondent. With him on the brief was Bolliger, Hampton & Tarlow, Portland.

No appearance for appellants Hahn, Stover and Gorsline.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendants appeal from a *pendente lite* civil contempt order. Under the order, they were incarcerated, and their release was contingent on their promise to obey an injunction. We affirm.

In July, 1989, plaintiff filed a civil action against defendants for engaging in anti-abortion demonstrations and blockades at plaintiff's medical clinic. Plaintiff seeks damages and a permanent injunction to restrain defendants from future acts of nuisance and trespass. On August 14, 1989, the trial court issued a preliminary injunction that prohibited defendants from, among other things, demonstrating in a "keep clear area" in front of the clinic doors, trespassing on its property and obstructing the free and direct passage of individuals entering and leaving the clinic.[1] In September, 1989, defendants violated that injunction by trespassing and blocking the clinic's doors for several hours. At a show cause hearing, several defendants informed the court that they did not intend to obey the injunction. The trial court entered an order on January 23, 1990, finding certain named defendants in contempt for wilfully violating the injunction and ordering them incarcerated "until they agree to obey the injunction, or the injunction is no longer in effect * * *." The order provides for the immediate release of any defendant who makes a "sworn or affirmed written or oral statement" that he or she intends to obey the injunction.[2]

Defendants assign error to that order, contending that ORS 33.020(2) does not authorize the court to order

---

[1] The trial court also ordered defendants to refrain from accosting plaintiff's patients and employees, intimidating and harassing them by shouting, screaming, chanting and yelling, and producing noise at a volume that substantially interferes with the operation of the hospital. The court specifically found that

"defendants have acknowledged their intent to continue with these activities and unless restrained by the court, it is reasonably apprehended that the activities will continue and will result in irreparable harm to the health and welfare of the patients of the Lovejoy Surgicenter and to the plaintiff's business * * *."

[2] Some of the contemnors immediately agreed to obey the injunction and were never incarcerated. Others initially refused and were incarcerated, but later agreed to comply and were released. Five individuals refused to obey the injunction and were incarcerated. Of those, three eventually agreed to comply, one was released on sick leave and the last contemnor is now a "part time" jail resident who goes home each night, having been released under an Intensive Supervision Program.

incarceration on those terms and that, if the court did have that authority, its exercise violated defendants' constitutional protection against self-incrimination.

The parties agree that defendants were found to be in indirect civil contempt of court. *See State ex rel Dwyer v. Dwyer,* 299 Or 108, 698 P2d 957 (1985). By acting in disobedience of a lawful order, ORS 33.010(1)(e), defendants exposed themselves to the sanctions in ORS 33.020:

> "(1)   Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in ORS 33.010(1)(a) and (b), or in ORS 1.240(1) [none of which is applicable here], it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100.

> "(2)   In addition to the punishment provided for in subsection (1) of this section, *the court or judge shall have power to constrain performance of any lawful order,* judgment or decree of such court or judge, *by imprisonment of the person failing or refusing to comply, until the order,* judgment or decree has been complied with." (Emphasis supplied.)

■   Defendants argue that the phrase "the * * * judge shall have power to constrain performance" restricts the application of subsection (2) to injunctions that require an affirmative act. They contend that the statute allows a court to compel the performance of an act that has been made mandatory under an injunction, but does not authorize the court to compel obedience with a negative or "prohibitory" injunction that requires individuals to *refrain* from certain conduct. Because the underlying injunction in this proceeding is prohibitory in nature, defendants argue that the court could not impose a subsection (2) sanction. We disagree.

■ ■   The Supreme Court has held that ORS 33.020(2) applies to civil contempt. *State ex rel Dwyer v. Dwyer, supra,*

299 Or at 111.[3] Imprisonment is therefore a permissible sanction for civil contempt, so long as the sentence is indeterminate. The contemnor, informed of what he must do in order to be released, "carries the key to his own jail cell." 299 Or at 111. The purpose of the sanction is to coerce future obedience with the court's order; the penalty ends when the defendant complies. *State v. Thompson,* 294 Or 528, 531, 659 P2d 383 (1983); *In the Matter of Virginia Hanks,* 290 Or 451, 458 n 10, 623 P2d 623 (1981). As LaFave and Scott, *Criminal Law* 39 (1972), says:

> "Thus it is a civil contempt for one, after having been enjoined by a court from doing a certain act, to do it; or conversely for one, ordered by the court to do some act, not to do it, at least if it is within his power to do so. For his civil contempt he may be imprisoned until he purges himself by compliance with the order."

Defendants could secure their release by agreeing to comply with the judge's order; that was their "key."

■     Orders that enjoin behavior may either mandate the *performance* of specific acts or mandate the *avoidance* of specific acts. By its own terms, ORS 33.020(2) authorizes judges to compel contemnors to perform any lawful order by imprisoning them for "failing or refusing to comply" with that order. Here, contemnors are refusing to comply. Refusal may take the form either of a failure to demonstrate certain behavior or a refusal to avoid prohibited conduct. The statutory sanctions for civil contempt therefore apply to both mandatory and prohibitory injunctions. In either case, a contemnor's *willingness to obey* the order triggers release. *See, e.g.,* Dobbs, "Contempt of Court: A Survey," 56 *Cornell L Rev* 269 (1971):

> "A similar problem may exist where the injunctive order is prohibitory in nature, so that there is no way the contemnor can, while in jail, demonstrate his willingness to avoid future violations. He can, however, *express to the judge an intention of future compliance,* and on this basis will usually be allowed

---

[3] There is an apparent misprint in *State ex rel Dwyer v. Dwyer, supra,* 299 Or at 111. However, from the advance sheets (volume 1985-9) and the errata page that was subsequently issued, we can ascertain that the court said:

"[P]enalties for criminal contempt are determinate and those for civil contempt [are indeterminate. The allowable punishments for criminal]] and civil contempts are stated in ORS 33.020(1) and (2), respectively * * *." 299 Or at 111.

to demonstrate his good faith outside the prison. * * * [C]ourts have been quite ready to release contemnors on their simple expressions of readiness to comply in the future * * *." (Emphasis supplied.)

■ Defendants contend that the trial court was not authorized to "compel self-incrimination or sworn statements against one's conscience." Although imprisonment for civil contempt may be inappropriate where the contemnor is objectively unable to comply with a lawful court order, defendants' argument that complying with the underlying injunction requires them to violate their consciences does not present that case. The court's order simply conditions defendants' release upon their demonstrating in a particular way their willingness to comply with the injunction and provides them with the requisite means to purge themselves of the contempt charge. As for the self-incrimination claim, even if defendants' agreement to obey a lawful court order could conceivably be used against them in a future criminal prosecution, that "may be faced when, and if, the occasion arises." *Langdon and Langdon,* 100 Or App 661, 664, 788 P2d 473 (1990).

Affirmed.