Argued and submitted May 5, reassigned August 30, decision of the Court of Appeals and order of the circuit court affirmed September 3, 1993

In the Matter of
Brad Reynolds, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF KLAMATH COUNTY,
*Respondent on Review,*

*v.*

## Brad REYNOLDS,
*Petitioner on Review.*

(CC 9100157CF; CA A72480; SC S39829)

857 P2d 560

Myron Gitnes, Klamath Falls, argued the cause and filed the petition for petitioner on review.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent on review. Amy E. Alpaugh, Assistant Attorney General, Salem, filed the response. With her on the response were Theodore R.

Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Angela Sherbo, Portland, filed an *amicus curiae* brief on behalf of Calvin Jackson.

Jenny Cooke, Portland, filed an *amici curiae* brief on behalf of the National Legal Aid and Defender Association, Oregon Criminal Defense Lawyers Association, and the Youth Law Center. With her on the brief were Martha Bergmark, Washington, D.C., of the National Legal Aid and Defender Association; Alice Bussiere and David Lambert, San Francisco, California, of the National Center for Youth Law; and Mark I. Soler and Susan L. Burrell, San Francisco, California, of the Youth Law Center.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The issue in this case is whether the jurisdictional phase of a juvenile proceeding under ORS 419.476(1)(a)[1] ("delinquency proceeding") is a "criminal prosecution" within the meaning of Article I, section 11, of the Oregon Constitution. For the reasons that follow, we hold that it is not.

A petition was filed in juvenile court in March 1991 alleging that the child, then 13, had done acts that, if done by an adult, would constitute sodomy in the first degree, ORS 163.405, a Class A felony; sexual abuse in the first degree, ORS 163.425, a Class B felony; and furnishing obscene materials to minors, ORS 167.065, a Class A misdemeanor.

■ Before the adjudicatory hearing, the child moved for a jury trial, citing Article I, section 11, of the Oregon Constitution, and the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.[2] The juvenile court denied the child's motion for a jury trial and, in May 1991, heard the matter without a jury. ORS 419.498(1). After taking the matter under advisement, the court informed the parties that it had found beyond a reasonable doubt that the child had committed two of the acts alleged in the petition and, therefore, that the child was within the court's jurisdiction pursuant to ORS 419.476(1)(a). The third allegation,

---

[1] ORS 419.476(1)(a) provides:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city[.]"

We note that the 1993 legislature has reorganized the juvenile code. *See* Or Laws 1993, ch 33. Those changes do not affect this case.

[2] There is no federal constitutional right to a jury in a juvenile delinquency proceeding. *McKeiver v. Pennsylvania*, 403 US 528, 545, 91 S Ct 1976, 29 L Ed 2d 647 (1971); *Schall v. Martin*, 467 US 253, 263, 104 S Ct 2403, 81 L Ed 2d 207 (1984) (same); *Bellotti v. Baird* 443 US 622, 635, 99 S Ct 3035, 61 L Ed 2d 797 (1979) (same); *cf. Duncan v. Louisiana*, 391 US 145, 149 n 14, 88 S Ct 1444, 20 L Ed 2d 491 (1968) ("A criminal process which was fair and equitable but used no juries is easy to imagine.").

The child argued in oral argument before this court that Article I, section 17, of the Oregon Constitution, also entitles him to a jury trial. Because that argument was not made to the trial court or in the child's petition for review to this court, we do not address it.

concerning sodomy, was dismissed by the juvenile court. After a dispositional hearing, the child, who already was on *informal* bench probation to the juvenile court as a result of earlier difficulties, was placed on *formal* probation for two years.

On appeal, the Court of Appeals affirmed *per curiam*, citing *State v. Turner*, 253 Or 235, 453 P2d 910 (1969). *State ex rel Juv. Dept. v. Reynolds*, 116 Or App 243, 839 P2d 288 (1992). This court allowed the child's petition for review to consider his claim that he had a constitutional right to a jury trial.

■　　Article I, section 11, of the Oregon Constitution, provides in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *."

The child's principal claim is that he is entitled to a jury trial, because the juvenile court proceeding in his case was a "criminal prosecution" under Article I, section 11.

Frequently, this court has approached constitutional questions under Article I of the Oregon Constitution by examining the historical context of the constitutional provision in question. A prime example is *State v. Kessler*, 289 Or 359, 614 P2d 94 (1980), in which this court was called on, for the first time, to determine the scope of Article I, section 27, of the Oregon Constitution, which provides that "[t]he people shall have the right to bear arms for the defence (sic) of themselves, and the State." In outlining its interpretive approach, the court wrote:

"Despite the many variations in wording, the states' constitutional provisions guaranteeing the right to bear arms share a common historical background. *We begin first with an examination of this historical background and then with an examination of the meaning and purpose of the particular words chosen by the Oregon drafters.* We are not unmindful that there is current controversy over the wisdom of a right to bear arms, and that the original motivations for such a provision might not seem compelling if debated as a new issue. *Our task, however, in construing a constitutional provision is to respect the principles given the status of constitutional guarantees and limitations by the drafters*; it is not to abandon these principles when this fits the needs of the moment." 289 Or at 362 (emphasis added).

The court took a similar approach to Article I, section 20 — the "equal privileges and immunities" clause of the Oregon Constitution — in *State v. Clark*, 291 Or 231, 630 P2d 810, *cert den* 454 US 1084 (1981). In *Clark*, this court considered whether the denial of a preliminary hearing to a defendant indicted by the grand jury, instead of by a district attorney's information, violated Article I, section 20. The court began by examining the history of that clause:

> "This guarantee, taken like most of Article I from Indiana's Constitution of 1851, has been a part of the Bill of Rights since Oregon became a state in 1859. Antedating the Civil War and the equal protection clause of the fourteenth amendment, its language reflects early egalitarian objections to favoritism and special privileges for a few rather than the concern of the Reconstruction Congress about discrimination against disfavored individuals or groups." 291 Or at 236.

Another example of such a historical approach to state constitutional interpretation appears in this court's Article I, section 8, jurisprudence. In Article I, section 8, cases, this court determines whether the limitation on speech falls within a "historical exception" to the constitutional free speech guarantee. *State v. Henry*, 302 Or 510, 732 P2d 9 (1987), provides an example of that approach. In *Henry*, this court was called on to determine whether a statute criminalizing the dissemination of obscene material violated Article I, section 8. The court concluded that obscene expression could not be so restricted, because the prohibition did not fall within any historical exception to the state's free speech guarantee.

Finally, this court has applied a historical approach in at least one case involving the right to jury trial under Article I, section 11. In *State ex rel Dwyer v. Dwyer*, 299 Or 108, 698 P2d 957 (1985), the question posed was whether a criminal contempt proceeding for failure to pay child support was a "criminal prosecution" within the meaning of Article I, section 11. The court examined criminal contempt proceedings in a historical context and concluded that such proceedings are "wholly confined within an historical exception that was well-established when the Oregon constitutional guarantee of a jury trial in all criminal prosecutions was adopted." 299 Or at 114.[3]

---

[3] In *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977), this court set forth an analysis for determining what is a "criminal prosecution" for

*Dwyer* and the other state constitutional cases cited above indicate that we should begin our analysis by determining whether, in 1859, when the Oregon constitutional guarantee of a jury trial "in all criminal prosecutions" was adopted, a person in the child's position would have been entitled to a jury trial. We turn to that question.[4]

At common law, children under a certain age were conclusively presumed to lack criminal capacity. 1 LaFave & Scott, Substantive Criminal Law 566, § 4.11 (1986); 4 Blackstone, Commentaries, chs II, XIX (Lewis ed 1900). In the United States, that age was 7 in some states and 10 in others. Mack, *The Juvenile Court*, 23 Harv L Rev 104, 106 (1909). Children between 7 (or 10) and 14 were presumed to lack criminal capacity, but that presumption could be rebutted. 1 LaFave & Scott, *supra*, at 566-68. Children 14 years old and older were deemed to be criminally responsible. *Ibid.* The common law did not differentiate between adults and children who had reached the age of criminal responsibility; those children were criminally convicted and punished as adults would be. Mack, *supra*, 23 Harv L Rev at 106. Oregon's Deady Code contained no statutes regarding juvenile offenders or the age of criminal responsibility, so it is likely that Oregon applied the common law rule. Thus, it would appear that, in 1859, a juvenile in the position of the child could have been prosecuted in the same manner as could any other accused felon. It follows that, in 1859, such a juvenile would have been entitled to a jury trial.[5]

---

constitutional purposes. However, the criteria relevant to the *Brown* analysis are *offense-specific*, 280 Or at 102-08, and do not apply to the present challenge.

[4] *See generally* Juvenile Law § 1.1 *et seq* (Oregon CLE 1984 & Supp 1988) (origins and evolution of Oregon juvenile court).

[5] We note that, under the current juvenile code, a child under the age of 15 may not be remanded to an adult court for criminal prosecution under any circumstances. Children aged 15 to 18 may not be criminally prosecuted unless remanded by the juvenile court. ORS 419.533.

When the Oregon Constitution was adopted in 1859, some persons under the age of 18 were presumed to be criminally responsible and others were not. Criminal responsibility initially depended on the age of the person.

In this case, a 13-year-old was charged with having committed acts that would be felonies if committed by an adult. Because of his age, however, the juvenile code prevented him from being held criminally responsible for those acts. That code,

The question then becomes: Have circumstances so changed that today a child in a juvenile delinquency proceeding under ORS 419.476(1)(a) is faced with a "criminal prosecution," as that term is used in Article I, section 11? We turn to that inquiry.

Late in the nineteenth century, the Oregon legislature enacted legislation that allowed some exceptions for children. One statute permitted courts to send children under 16 who were convicted of crimes to state reform school instead of to prison. 1 Hill's Laws Annot § 1414 (1887). In 1893, the legislature enacted statutes that gave adult criminal courts discretion to treat juveniles differently from adults: (1) the court could suspend judgment against a minor under 16 if the court believed that the child could be reformed; (2) although the court could send a child between the ages of 10 and 16 who was convicted of a crime punishable by imprisonment to reform school or county jail instead of sending the child to prison, children still were subject to capital punishment; (3) the grand jury could recommend reform school rather than indicting a child under 16; (4) the court could stay criminal proceedings for youths between 10 and 16, and commit them to the care of an institution. I Codes and Statutes of Oregon, ch XII, § 1449, II Codes and Statutes of Oregon, ch VII, §§ 3639-41 (Bellinger and Cotton 1902).

In sum, juvenile proceedings, as we now know them, did not exist in the nineteenth century in Oregon. *See State v. Dunn*, 53 Or 304, 309-10, 99 P 278, 100 P 258 (1909) ("delinquency" was unknown to the common law).

Oregon created its first juvenile court in 1907. From 1907 to the present, juvenile justice in Oregon has been based primarily on a "rehabilitation" model, rather than on a "due process" or "crime control" model.[6] That is to say, for 86

instead, mandatorily diverted him into the juvenile court system. Because the child was too young, he could not presently have been prosecuted as an adult.

[6] *See* Holman, *Oregon's New Juvenile Code*, 39 Or L Rev 305 (1960) ("The underlying premise of the [pre-1960] juvenile code was that juveniles who offended against the law * * * should be dealt with through a specialized procedure in a court which, when possible, had a judge specialized in dealing with children. The procedure was civil, not criminal, and equitable in that the remedies might be flexible and based upon 'conscience' and judgment, rather than upon more or less rigid rules of law.").

years, juvenile courts in Oregon have emphasized the rehabilitation of allegedly delinquent children. Those courts often have been criticized for showing too much leniency toward youthful offenders; they rarely have been criticized for the severity of their dispositional judgments. Without exception, this court's cases support the conclusion that the Oregon juvenile justice system always has been focused on the rehabilitation of delinquent youth. *See, e.g., State v. Gullings*, 244 Or 173, 177, 416 P2d 311 (1966) (juvenile court salvages and guides rather than punishes); *Hills v. Pierce*, 113 Or 386, 231 P 652 (1925) (the purpose of juvenile court is not to convict or punish but to protect); *State v. Dunn, supra*, 53 Or at 309-10 (juvenile court treats delinquent children not as criminals but as wards to be protected); *State v. Eisen*, 53 Or 297, 300, 99 P 282 (1909) (general purpose of juvenile code is not to punish, but to reform). Unlike many states that recently have shifted their focus from juvenile rehabilitation to juvenile accountability and punishment, Oregon has remained faithful to its original emphasis on the rehabilitation of delinquent youth.[7]

After almost a half-century, the 1957 legislature recognized that, since 1909, the laws affecting juveniles had been enacted piecemeal and were overdue for comprehensive revision. *See* Report of the Legislative Interim Committee on Judicial Administration, Part II, Juvenile Law (1959) (reporting history of juvenile courts and recommending proposed new juvenile code). For example, juvenile courts were not courts of exclusive original jurisdiction in juvenile matters, but exercised concurrent jurisdiction with adult courts. *See In re Loundagin*, 129 Or 652, 675, 278 P 950 (1929) (unless juvenile courts have exclusive jurisdiction, minors may be tried for crimes in circuit courts). Before 1959, in juvenile delinquency matters the district attorney determined in the first instance whether the case would be heard in juvenile court or in adult court. Adult felons could be confined in juvenile training schools and, under certain circumstances,

---

[7] The trend in the United States appears to be toward the "crime control" model of juvenile justice, especially for children who are involved with drugs, gang activity, or physical violence. Sanborn, *The Right to a Public Jury Trial: A Need for Today's Juvenile Court*, 76 Judicature 231, 234 (1993). In Oregon, regardless of the delinquent conduct, a juvenile may not be remanded to adult court for criminal prosecution unless a juvenile court judge so orders, after considering statutory criteria. ORS 419.533.

juvenile delinquents could be confined in adult penal institutions. ORS 421.265 (1955).

The 1957 legislature created a legislative interim committee to recodify and amend the juvenile laws to ensure uniform and intelligent treatment of juvenile crime. The result of that effort was the enactment, in 1959, of the current juvenile code, creating a separate court system to deal with children under 18 years of age. *See* Holman, *Oregon's New Juvenile Code*, 39 Or L Rev 305, 305-06 (1960) (describing process). However, the new juvenile code reflected the drafters' view that the basic philosophy of the pre-1959 code "is sound and should be retained." Report of the Legislative Interim Committee on Judicial Administration, Part II, Juvenile Law, *supra*, at 10.[8] The 1959 juvenile code, effective January 1960, was a complete recodification of the laws affecting juveniles. Or Laws 1959, ch 432. Under ORS chapter 419, juvenile court proceedings became *sui generis*. For the first time, the juvenile court was given exclusive original jurisdiction in specified circumstances involving children.[9] However, as Judge Holman, a member

---

[8] A child found to be delinquent under ORS 419.476(1)(a) also might be found to be "dependent" under paragraphs (b)-(f).

[9] Among the more relevant provisions of the 1959 juvenile code, all of which remain in the current code, are the following:

ORS 419.511 provides in part:

"(1) The duration of any disposition made pursuant to ORS 419.507(1)(a) to (c) shall be fixed by the court and may be for an indefinite period. Any placement in the legal custody of the Children's Services Division shall be for an indefinite period. However, in cases under ORS 419.476(1)(a), the period of any disposition made pursuant to ORS 419.507(1)(a) to (c) shall not exceed the maximum period of institutionalization or commitment authorized if the act had been committed by an adult. The period of any disposition shall not extend beyond the date on which the child becomes 21 years of age.

"(2) In any case under ORS 419.476(1)(a) the court, notwithstanding subsection (1) of this section, may place the child on probation to the court for a period not to exceed five years. However, the period of probation shall not extend beyond the date on which the child becomes 21 years of age.

"(3) The court may, in lieu of or in addition to any disposition under ORS 419.507(1)(a) to (c), direct that the child be examined or treated by a physician, psychiatrist or psychologist, or receive other special care or treatment in a hospital or other suitable facility."

ORS 419.543 provides:

"An adjudication by a juvenile court that a child is within its jurisdiction is not a conviction of a crime or offense."

of the legislative interim committee that drafted the new code and later a justice of this court, observed: "This concept [*i.e.*, the rehabilitation model of juvenile justice] was retained by the [legislative interim] committee in the drafting of the new code." Holman, *supra*, 39 Or L Rev at 305.[10] That concept, and the statutory scheme that is designed to further it, has remained essentially unchanged to the present day. The concept provides the context in which we address the question now before us, a question that we believe comes down to this: By creating a separate juvenile court system, with all of its special provisions and rules, has the legislature created a form of proceeding for determining whether a juvenile committed a felonious act that is so different from the criminal

---

ORS 419.571(1) provides:

"Temporary custody shall not be deemed an arrest so far as the child is concerned. All peace officers shall keep a record of children taken into temporary custody and shall promptly notify the juvenile court or counselor of all children taken into temporary custody."

ORS 419.573 provides in part:

"This section establishes procedures that a person must follow who takes a child into temporary custody under ORS 419.569. The person must comply with the following:

"(1) As soon as practicable after the child is taken into custody, the person taking the child into custody shall notify the child's parent, guardian or other person responsible for the child.

"(2) The person taking the child into custody shall release the child to the custody of the child's parent or other responsible person in this state, except in the following cases[.]"

Additionally, the juvenile code emphasizes the confidentiality of juvenile court records. ORS 419.567, 419.839.

[10] Explaining the 1959 juvenile code, Judge Holman also wrote:

"It may be readily seen that juveniles falling into the toils of the law have not been afforded certain rights that are granted under state and Federal constitutions to persons charged with crime. An illustration is the omission of a provision for bail. A continual and perpetual argument rages concerning the propriety of not affording all of these rights to juveniles. On one side the failure to afford certain criminal procedural rights to the child is justified by the argument that he is not being charged with a crime and that therefore affording him these rights is unnecessary, while the opponents argue that, no matter under what guise an individual is deprived of his liberty, he should be afforded these rights.

"Suffice it to say that the constitutionality of withholding from juveniles all the rights given criminals has been upheld by the courts in almost every instance where it has been questioned." Holman, *supra*, 39 Or L Rev at 316-17 (footnote omitted).

*See also* Report of the Legislative Interim Committee on the Judiciary, Proposed Revision, Oregon Juvenile Code (1976).

prosecution norm that the proceeding can be said not to be a "criminal prosecution" within the meaning of Article I, section 11?

The question is not entirely new. This court has, on one previous occasion, discussed the question whether juries are constitutionally required in juvenile delinquency proceedings. In *State v. Turner*, 253 Or 235, 237, 453 P2d 910 (1969), the facts were as follows:

> "Joan Turner, a 15-year-old girl, was accused by petition in juvenile court of causing the death of a woman in the course of an assault and robbery. The court conducted a hearing without a jury, and determined that Joan had committed an act which, if committed by an adult, would have been a crime (murder). The court declared her a ward of the court and committed her to the Hillcrest School. She appeals, contending that she was entitled to a trial by jury." (Footnote omitted.)

In Turner's appellate brief in this court, she expressly relied on Article I, section 11, of the Oregon Constitution, as well as on the Sixth Amendment, in contending that she was entitled to a jury trial. In rejecting Turner's constitutional arguments in support of her claim for a jury trial, this court stated:

> "Prior to [*In re Gault*, 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967)], this court and a majority of courts elsewhere had held that juvenile proceedings were not 'criminal' within the meaning of specific constitutional guarantees of trial by jury in criminal prosecutions. See Oregon Constitution, Art I, § 11, and United States Constitution, Amendment VI. And see *State v. Gullings*, 244 Or 173, 176-77, 416 P2d 311 (1966). We adhere to the view that juvenile proceedings are not 'criminal[.]' " *Id.* at 238.[11]

It is clear from reading *Turner* as a whole, however, that the court did not separately analyze the scope of Article I, section 11. Thus, the case is not a strong precedent on the scope of that provision. The *Turner* case is more useful, however, for

---

[11] *See also State v. Gullings, supra*, 244 Or at 176-77 ("The procedure is civil, not criminal, and equitable in that the remedies may be flexible and based upon 'conscience' and judgment, rather than upon more or less rigid rules of law."); *Hills v. Pierce, supra*, 113 Or at 390 (holding that purpose of juvenile court is not to convict or punish, but to protect); *State v. Dunn, supra*, 53 Or at 308-09 (holding that juvenile court treats delinquent children not as criminals, but as wards to be protected); Juvenile Law § 8.13 (Oregon CLE 1984 & Supp 1988) (right to jury).

its discussion of the nature of the juvenile court process.[12] *Id.* at 242-44.

With *Turner* in mind, we turn to whether the current juvenile code, as well as its application to the child in this case, has the characteristics of a criminal prosecution.

We note that, in circumstances like those in the present case, first degree sexual abuse is a Class B felony punishable by up to 10 years' imprisonment. ORS 163.427, 161.605. An adult convicted of first degree sexual abuse would have faced a minimum presumptive sentence of 16 to 18 months' imprisonment, OAR chapter 253, App 1. Furnishing obscene materials to minors is a Class A misdemeanor punishable by up to one year of imprisonment or a $10,000 fine. ORS 167.065, 161.615. By contrast, the juvenile court in this case merely upgraded the child's previous informal probation to formal probation and sent him home. We conclude that the juvenile court in this case demonstrated the juvenile code's focus on the "rehabilitative" model of juvenile justice rather than on the "punitive" model.

Although confinement in a juvenile training school has certain characteristics of a criminal prosecution, in that it deprives a child of liberty, we note that many other provisions of law provide for a form of confinement without also providing for a jury trial on the merits. *See, e.g.,* ORS 33.045 (direct and indirect civil contempt); ORS 419.569(1)(b) (temporary custody of child for care, placement, and supervision); ORS 426.095 (involuntary commitment to a mental health facility); ORS 426.215 *et seq* (involuntary commitment of

---

[12] The child acknowledges the *Turner* holding but contends that amendments to the juvenile code since 1969, when this court decided *Turner*, have so changed the procedures that juvenile delinquency proceedings have become criminal prosecutions. In arguing that the juvenile code has become more "punitive" since this court decided *Turner* in 1969, the child relies primarily on 1989 amendments to ORS 419.800, which provide that certain felony sex offenses may not be expunged. The child argues that, because ORS 419.800 precludes "expunction" of juvenile court records of certain felony sex offenses, *see* ORS 419.800(4)(j), this delinquency proceeding was virtually identical to an adult criminal prosecution and that the child therefore was entitled to the jury trial provided for in "criminal prosecutions" under Article I, section 11. However, the expunction law at issue was not passed until after *Turner* was decided. Or Laws 1971, ch 226. When *Turner* was decided, *no* juvenile records could be expunged. In the context of this case, therefore, the fact that some juvenile records cannot be expunged now does not advance the child's argument.

mentally retarded); ORS 426.460 (detention in drug or alcohol addiction facility). In 1859, as now, mental commitments and other proceedings that could result in confinement for non-punitive reasons were tried to the court without a jury.

Moreover, the noncustodial dispositional alternatives provided by the juvenile code are far more extensive and flexible than those available in the adult criminal justice system. Likewise, the pretrial enforcement procedures in the juvenile justice system emphasize noncustodial, at-home disposition in the physical custody of parent, guardian, or relative. Additionally, unlike an adult who may be photographed and fingerprinted whenever he or she is taken into custody, a child may be photographed or fingerprinted by a law enforcement agency only under narrowly authorized circumstances. ORS 419.584. Moreover, the storage and use of photographs and fingerprints of juveniles is restricted by law. ORS 419.584 (3)-(6).

The clear and unequivocal message of Oregon's juvenile code is to notify and involve parents whenever possible and to focus on the family, to involve schools and appropriate social agencies as early as possible, to handle matters informally, and to approach each child's alleged delinquency as an equitable problem rather than as a criminal problem. The least restrictive alternative disposition is preferred; detention, even on a temporary basis, is not favored.

Among the many significant differences between the juvenile code and the adult criminal code are the provisions in ORS chapter 419 allowing, and in some cases mandating, *parental* involvement in the rehabilitative process. For example, ORS 419.474(2) expresses a clear legislative choice that supervision and treatment shall "preferably [be] in the child's own home." Generally, juvenile court proceedings must be conducted "in the county where the child resides." ORS 419.479(1). Notice of any proceedings must be given to the child *and to the parents*, if their identity and whereabouts are known. ORS 419.486, 419.497, 419.573.

But the juvenile code goes even further; it empowers the juvenile court to mandate the involvement of the parents in the process, ORS 419.507(1)(a) and (8), 419.513, 419.519, and to punish for contempt of court parents failing to comply

with any lawful order of the court, ORS 419.519. ORS 419.507(8) permits the juvenile court to order parents to assist the court in any reasonable manner in providing appropriate education or counseling for the child, to order parents to participate in educational or counseling programs, to participate in alcohol or drug treatment programs, and to participate in, or to be directly involved in, treatment. Coupled with the juvenile code's focus on the best interests and welfare of the child, this policy of parental involvement in the rehabilitation of children distinguishes a delinquency proceeding from an adult criminal prosecution for purposes of Article I, section 11. The message of the juvenile code is clear and unequivocal — rehabilitation of children in trouble is a *family* affair. In no way is the adult criminal justice system comparable to that model.

In summary, in the jurisdictional phase of a delinquency proceeding under ORS 419.476(1)(a), the issue is not whether the child should be punished for his or her conduct but, rather, whether the statutory grounds for jurisdiction have been established and, if so, what disposition is in the child's best interests. Juvenile courts are concerned with rehabilitation, not punishment. If the state wishes to prosecute a child criminally, it must do so by transferring the child to an adult criminal court.

Admittedly, juvenile delinquency proceedings have many of the "due process" characteristics of adult criminal prosecutions. Many procedural requirements of the adult system now are required in juvenile delinquency proceedings, some imposed by federal authority and others by state authority. It is significant, however, that no federal or Oregon authority heretofore has required a jury trial in juvenile court. To the contrary, federal and Oregon authority consistently have held that no jury is required. *See, e.g., McKeiver v. Pennsylvania,* 403 US 528, 545, 91 S Ct 1976, 29 L Ed 2d 647 (1971);[13] *In re Gault, supra; State v. Turner, supra; State ex*

---

[13] Although *McKeiver* is a plurality opinion, Justice Brennan, concurring in the judgment, wrote:

"In the context of * * * juvenile delinquency proceedings, what [due process] means is that the States are not bound to provide jury trials on demand so long as some other aspect of the process adequately protects the interests that Sixth Amendment jury trials are intended to serve." 403 US at 554 (Brennan, J., concurring).

*rel Juv. Dept. v. Jackson*, 122 Or App 389, 858 P2d 158 (1993); *see also* Annot, *Right to Jury Trial in Juvenile Court Delinquency Proceedings*, 100 ALR2d 1241, 1242-43 (1965 & Supp 1993) (collecting cases showing that it is now almost universally held that, in the absence of a statute that provides for a jury trial in juvenile delinquency proceedings, the individual charged with being a delinquent has no right, under the federal or pertinent state constitution, to demand that the issue of his or her delinquency be determined by a jury).[14]

We conclude that, in the juvenile code, the legislature so changed the way that a juvenile is treated as to create a proceeding that is *sui generis*. We hold that the jurisdictional phase of a juvenile proceeding under ORS 419.476(1)(a) is not a "criminal prosecution" within the meaning of Article I, section 11, of the Oregon Constitution. Accordingly, the juvenile court properly denied the child's motion for a jury trial.

The decision of the Court of Appeals and the order of the circuit court are affirmed.

---

Justice Brennan concluded that the admission of the press and the public to juvenile proceedings adequately protected the interests that Sixth Amendment jury trials are intended to serve. *Id.* at 555-56. In Oregon, juvenile delinquency proceedings have been open to the press and to the public for more than a decade. *State ex rel Oregonian Pub. Co. v. Deiz*, 289 Or 277, 284-85, 613 P2d 23 (1980).

[14] Only two states have found a *state constitutional right* to a jury trial in a juvenile delinquency proceeding. *See RLR v. State*, 487 P2d 27 (Alaska 1971) (state constitutional right to jury trial in delinquency proceeding); *Peyton v. Nord*, 78 NM 717, 437 P2d 716 (1968) (same). Several states, however, have statutes that provide for juries in certain cases or when ordered by the court. *See* Annot, *Right to Jury Trial in Juvenile Court Delinquency Proceedings, supra*, at 1246-48.

California's juvenile justice system places more emphasis on crime control and public protection, yet does not recognize a state constitutional right to a jury trial in juvenile delinquency proceedings. *Ex Parte Daedler*, 194 Cal 320, 228 P 467 (1924). Washington also has rejected a claim that a jury trial is guaranteed in juvenile delinquency proceedings under that state's constitution. *State v. Schaaf*, 109 Wash 2d 1, 8, 743 P2d 240 (1987).