Argued and submitted August 27, 2019, affirmed July 8, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZACHAREY NATHANIEL ISAAC REASONER,
aka Zachery Nathaniel Isaac Reasoner,
*Defendant-Appellant.*

Washington County Circuit Court
17CR36419; A166286

495 P3d 686

Defendant was a juvenile when he committed the offenses that gave rise to the two misdemeanor convictions that he challenges on appeal. Under ORS 419C.370 and a 1998 Washington County Juvenile Court order waiving all juvenile motor vehicle violations to adult court, defendant was tried in criminal court for those offenses. On appeal, he argues that the blanket waiver from juvenile to criminal court authorized by ORS 419C.370 impermissibly delegates legislative authority to the judicial branch and also violates due process. *Held*: The delegation of legislative authority to the judicial branch did not violate separation-of-powers principles because the legislature provided substantive guidance on the exercise of that power. Further, ORS 419C.370 provides individualized opportunity for a juvenile to be waived back to juvenile court and thus provides adequate procedural safeguards. Finally, a legislative waiver of a class of cases to criminal court does not violate procedural due process, and defendant's facial and as-applied due process challenges to the juvenile court's authority under ORS 419C.370 to waive individual cases back to juvenile court fail.

Affirmed.

Ricardo J. Menchaca, Judge.

Matthew J. Steven argued the cause and filed the briefs for appellant.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Kistler, Senior Judge.*

_____

* Kistler, S.J., *vice* Powers, J.

KISTLER, S. J.

Affirmed.

**KISTLER, S. J.**

ORS 419C.370 authorizes the juvenile court in each county to enter an order waiving "all cases involving *** [v]iolation of a law or ordinance relating to the use or operation of a motor vehicle" to criminal or municipal court, subject to the juvenile court's ability to waive individual cases back to juvenile court. Pursuant to that statute and a 1998 Washington County Juvenile Court order implementing it,[1] defendant was charged and convicted in criminal court for two misdemeanors related to the operation of a motor vehicle. On appeal, he raises two challenges to ORS 419C.370. He argues that ORS 419C.370 delegates legislative authority to the judicial branch in violation of the Oregon Constitution and that the waiver of juvenile cases authorized by ORS 419C.370 violates due process. We affirm the trial court's judgment.

The relevant facts are undisputed. When defendant was 16 years old, he was out driving with four friends in Washington County. After the car he was driving ran into a truck, defendant fled from the scene. Bystanders pursued defendant, and the police later apprehended him. Pursuant to ORS 419C.370 and the 1998 Washington County Juvenile Court order, the state charged defendant with two misdemeanors: reckless driving in violation of ORS 811.140 and failure to perform the duties of a driver in violation of ORS 811.700. A jury found him guilty of both offenses. At sentencing, the trial court suspended imposition of sentence, placed defendant on probation for five years, revoked his driver's license, and ordered him to pay the victims $17,195.75 in restitution. The trial court waived all other fines and monetary obligations.

On appeal, defendant raises three assignments of error.[2] He argues initially that ORS 419C.370 delegates

---

[1] The 1998 Washington County Juvenile Court order essentially tracks the terms of ORS 419C.370 and waives all cases relating to motor vehicle violations to criminal or municipal court.

[2] All three of defendant's assignments of error arise out of the operation of the 1998 Washington County Juvenile Court order waiving motor code violations to criminal or municipal court. As explained below, he raised two legal challenges to the operation of that order, and the trial court made rulings on those challenges, which we discuss below.

legislative authority to the judicial branch in violation of the separation-of-powers doctrine in the Oregon Constitution. He argues additionally that the waiver of juvenile cases that ORS 419C.370 authorizes is inconsistent with the Fourteenth Amendment Due Process Clause, both facially and as applied.[3] We first set out the text and legislative history of ORS 419C.370 and then turn to defendant's state and federal constitutional arguments.

ORS 419C.370 provides, in part:

"(1)   The juvenile court may enter an order directing that all cases involving:

"(a)   Violation of a law or ordinance relating to the use or operation of a motor vehicle * * * be waived to criminal or municipal court;

"* * * * *

"(2)   Cases waived under subsection (1) of this section are subject to the following:

"(a)   That the criminal or municipal court prior to hearing a case, other than a case involving a parking violation, in which the defendant is or appears to be under 18 years of age notify the juvenile court of that fact; and

"(b)   That the juvenile court may direct that any such case be waived to the juvenile court for further proceedings."

What is now codified as ORS 419C.370 finds its source in the 1959 Juvenile Code, *see* Or Laws 1959, ch 432, § 31(2), and the relevant legislative history comes from a 1957 interim committee report, which proposed the draft juvenile code that the 1959 legislature enacted. *See State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 569-70, 857 P2d 842

---

[3] Defendant's assignments of error do not identify the specific rulings that he challenges, as ORAP 5.45(3) requires. However, we note that defendant filed a pretrial motion in criminal court for a waiver hearing to juvenile court. In support of that motion, he argued only that the blanket waiver that ORS 419C.370 authorizes is a facial violation of due process. The trial court denied that motion. The day trial began, defendant renewed his earlier due process argument and focused on an issue that he previously had mentioned in passing—whether ORS 419C.370 delegates legislative authority to the courts in violation of the Oregon Constitution. At the end of that argument, defendant asked the trial court to conduct an individual waiver hearing but added that he would need a set over to prepare for that hearing. The trial court denied defendant's request for an individual waiver hearing and a set over because they were untimely.

(1993) (discussing legislative history of the 1959 Juvenile Code).[4] In considering what is now codified, in part, as ORS 419C.370, the interim committee explained that the experts were divided over whether motor vehicle violations involving juveniles should be tried in juvenile or traffic court. The committee noted that "some experts in traffic law enforcement strongly recommend that all motor vehicle cases, including those that involve children, should be handled in traffic courts" while "some experts in juvenile law recommended that all children's cases, including those that involve traffic offenses, should be handled in juvenile courts." Report of the Legislative Interim Committee on Judicial Administration, Part II Juvenile Law 24 (Jan 1959).

The committee noted that the same "difference in viewpoint [exists] among the juvenile court judges in [Oregon]." *Id.* It observed that the judges' differing views appeared to derive from "whether or not the juvenile court [in a particular county already] had a good traffic program." *Id.* The committee report explained that, if a juvenile court had a developed traffic program, there was substantial agreement that the juvenile court should decide all cases involving violations relating to the use or operation of a motor vehicle. *Id.* Not all county juvenile courts had developed traffic programs, however, and the report concluded that the better course was to permit each county to experiment with what worked best administratively in that county. *Id.*

Specifically, the interim committee recommended that "[c]ounties such a[s] Multnomah which have a developed juvenile traffic court should be encouraged to continue it." *Id.* However, it explained that "counties which do not have such a program should not have their juvenile courts swamped with routine traffic cases." *Id.* The committee accordingly recommended

---

[4] The 1959 predecessor to ORS 419C.370 addressed only blanket waivers of "cases involving [a] violation of law or ordinance relating to the use or operation of a motor vehicle." *See* Or Laws 1959, ch 432, § 31(2). Later legislatures authorized juvenile courts to order blanket waivers of violations of other laws, such as boating and game laws. *See former* ORS 419.533 (1987), *renumbered as* ORS 419C.370 (1993). Because this case involves the waiver of violations relating to the use or operation of a motor vehicle, which the legislature authorized in 1959, the relevant legislative history comes from the 1957 interim committee report.

"that the juvenile court may retain jurisdiction of all these cases or it may [waive] them all, subject to a requirement that the traffic court notify the juvenile court of all cases involving children and that the juvenile court be authorized to [waive back] to itself cases which suggest that the child needs special treatment or supervision."

*Id.*

In authorizing the waiver for violations of the motor vehicle laws, the interim committee recognized that "routine violations" of the motor vehicle laws differed from juvenile violations of other laws. *See id.* For example, the committee recommended that, even though a license suspension could not exceed a year, it could extend beyond the youth's eighteenth birthday. *Id.* Similarly, it recommended that, even though a juvenile court finding is not ordinarily treated as a conviction, "a finding by a juvenile court that a child has violated a motor vehicle law [should be] treated as a conviction for the purposes of driver licensing." *Id.* at 25. In explaining that recommendation, the committee noted that the driver licensing laws have a civil purpose—"removing demonstrably bad drivers from the highway." *Id.* Accordingly, even when a youth's motor vehicle violations are adjudicated in juvenile court, the youth's driving record should still reflect his or her "signs of poor driving in the same way as an adult who has been convicted of a motor vehicle offense." *Id.* The 1959 Legislative Assembly agreed. *See* Or Laws 1959, ch 432, §§ 31(2), 35, 79 (codifying the waiver provision and sanctions for motor code violations and amending *former* ORS 482.480[5] to provide that a juvenile court finding regarding a youth's violations of the motor vehicle code "shall be the equivalent of a conviction" for the purposes of the youth's driving record).

With that background in mind, we turn to defendant's state constitutional argument. Defendant starts from the proposition that the legislative branch has exclusive

---

[5] In 1983, the legislature repealed *former* ORS 482.480 as part of a major revision of the traffic code, Or Laws 1983, ch 338, § 978, and enacted a new section, *former* ORS 809.370 (1983), *renumbered as* ORS 809.412 (2005). Or Laws 1983, ch 338, § 349. ORS 809.412 provides that, if a juvenile court finds that a youth within its jurisdiction has committed an offense that requires, on conviction for that offense, the suspension or revocation of driving privileges, the juvenile court shall order the suspension or revocation of the youth's driving privileges. *See also* ORS 419C.374(1) (cross-referencing ORS 809.412).

authority to define prospectively when a class of juvenile cases will be waived to criminal or municipal court. Although defendant recognizes that the legislature can delegate that authority to another branch, he contends that the delegation in ORS 419C.370(1) violates the Oregon Constitution because it lacks sufficient substantive and procedural safeguards. Specifically, he argues that: (1) ORS 419C.370 lacks any substantive standards to guide the courts' exercise of the delegated authority; (2) there are "no extrajudicial procedural mechanisms to ensure that the legislature can later correct any misuses of the delegated power"; and (3) the "legislature does not appear to have reviewed any decisions to enact waivers in any judicial circuit." The state responds that the legislative and judicial branches have long shared responsibility for deciding when youths should be tried as juveniles or adults and that ORS 419C.370 reflects an exercise of that shared authority rather than a delegation of exclusive legislative authority.

As defendant notes, ORS 419C.370(1) authorizes a juvenile court to enter an order that prospectively waives a class of juvenile cases (violations of law relating to the use of a motor vehicle) to criminal or municipal court, subject to certain conditions. Defendant reasons that, because the authority to announce such a rule is exclusively the province of the legislature, it necessarily follows that the Washington County Juvenile Court was exercising delegated legislative authority when it waived a class of juvenile cases to criminal or municipal court in 1998. We question, as an initial matter, whether the premise of defendant's argument is correct.

When the Oregon Constitution was adopted, state courts defined, as a matter of their common-law authority, when juveniles, as a class, would be held criminally responsible for their acts. *Reynolds*, 317 Or at 566. As the court explained in *Reynolds*, state courts determined, as a matter of common law, that children under seven years of age would not be held criminally responsible for their acts, that there was a rebuttable presumption that children between seven and 14 years of age were not criminally responsible for their acts, and that children over 14 years of age were deemed criminally responsible. *Id.* Put differently, when the Oregon Constitution was adopted, the Oregon courts exercised

their common-law authority to announce prospective rules defining when a class of juveniles would be tried as adults. *See id.*

Establishing the age of criminal responsibility for a class of juveniles is not identical to determining prospectively whether to waive a class of juveniles to criminal court. It is, however, a very similar exercise of authority, which suggests that defendant may be too quick in arguing that the power to determine prospectively when a class of juveniles may be held criminally responsible is an exclusive legislative prerogative. Perhaps the more apt question is not whether the legislature has exclusive authority to announce prospective rules regarding a class of juveniles' criminal responsibility, as defendant contends; rather, it is whether the 1959 Juvenile Code reflects a legislative intent to displace the courts' preexisting common-law authority to make that determination. *See Horton v. OHSU*, 359 Or 168, 181-82, 376 P3d 998 (2016) (reaffirming that, within constitutional limits, the legislature can modify common-law rules).

On that question, the Oregon Supreme Court has explained that, "in the [1959] juvenile code, the legislature so changed the way that a juvenile is treated as to create a proceeding that is *sui generis*." *Reynolds*, 317 Or at 575. While the 1959 Juvenile Code generally reflects an intent to displace the common law, as *Reynolds* explained, the legislative history regarding ORS 419C.370 points in a different direction. That legislative history establishes that, when the 1957 interim report was written, some county juvenile courts were retaining jurisdiction over all motor vehicle code violations while other county juvenile courts were waiving those cases to traffic court. The legislative history also reveals that the 1959 Legislative Assembly declined to interfere with that practice. Rather than delegating legislative authority to the juvenile courts, as defendant argues, ORS 419C.370 may reflect a decision to refrain from entering the field; that is, it may reflect a legislative decision to avoid displacing the county juvenile courts' existing authority to determine class-based rules regarding retention or waiver of motor vehicle code violations. If ORS 419C.370(1)

is read that way, the premise of defendant's state constitutional argument fails.

We recognize, however, that the text of ORS 419C.370(1) can be interpreted another way. It can be read as delegating legislative authority to county juvenile courts to continue their practice of retaining or waiving motor code violations. We accordingly assume that ORS 419C.370(1) reflects a legislative delegation of authority to continue that practice and turn to whether ORS 419C.370 contains sufficient safeguards to comply with Oregon's separation-of-powers doctrine.

As noted, defendant argues that the delegation of legislative authority in ORS 419C.370 is constitutionally defective for three reasons. He contends initially that ORS 419C.370(1) lacks a "set of factors or standards to be considered" in deciding whether to retain or waive all motor vehicle violations. We explained, however, in *City of Damascus v. Brown*, 266 Or App 416, 441, 337 P3d 1019 (2014), that the absence of substantive standards to guide the exercise of delegated legislative authority is not dispositive. The Oregon Supreme Court has made the same point more explicitly:

> "We continue to take the following view, first expressed by this court nearly a half century ago: '*There is no constitutional requirement that all delegations of legislative power must be accompanied by a statement of standards circumscribing its exercise.*' *Warren v. Marion County*, 222 Or 307, 313, 353 P2d 257 (1960). Rather, the procedure established for the exercise of that power must furnish adequate safeguards against the arbitrary exercise of the delegated power."

*MacPherson v. DAS*, 340 Or 117, 135-36, 130 P3d 308 (2006) (emphasis added).

For example, Measure 37, the statute at issue in *MacPherson*, provided that, if a landowner's property values had been reduced by certain land use regulations, the governing body could either (1) compensate the landowner for any loss of value or (2) modify, remove, or not apply the regulation. *See id.* at 134-35 (describing Measure 37). Measure 37 did not set out substantive standards to guide the governing

body's choice between those two alternatives. However, the court explained that a landowner's ability to seek compensation and the ability to seek judicial review of the governing bodies' decision provided sufficient safeguards to make any delegation of legislative authority constitutional. *Id.* at 135-36.

In this case, the text of ORS 419C.370 does not expressly set out standards to guide the juvenile courts' exercise of their decision to retain or waive motor vehicle code violations. *MacPherson*, however, reaffirmed that express standards are not a necessary prerequisite for a constitutional delegation of legislative authority. Beyond that, the legislative history of ORS 419C.370 makes clear that the administrative capacity of a county's juvenile court to handle motor vehicle code violations without being "swamped with routine traffic cases" is a central consideration in deciding whether to retain or waive all violations related to motor vehicles. In our view, ORS 419C.370, properly interpreted, provides the substantive guidance that defendant contends is lacking.

Moreover, ORS 419C.370(2) allows juvenile courts that have waived all motor vehicle violations to criminal or municipal court to waive individual cases back to juvenile court where appropriate. Not only does the statute permit juvenile courts to initiate that process but a juvenile who has been waived to criminal court as part of a blanket waiver can always request a waiver back to juvenile court.[6] The ability of juveniles subject to a blanket waiver to seek

---

[6] Judge Holman, a member of the 1957 interim committee that drafted the bill, explained the significance of that option:

"[T]he new code also provides that, if juvenile traffic cases are [waived] by blanket order, the juvenile judge may recall any particular case in which assumption of jurisdiction by the juvenile court is warranted. The traffic court thus has jurisdiction subject to a condition subsequent. It will be recalled that the juvenile court always has power to [waive] a particular case to the criminal court, including a traffic court. In such a case, a [waiver] order is a condition precedent to the traffic court's jurisdiction. The practical effect of a blanket [waiver] order, therefore, is simply to shift the condition from precedent to subsequent, but not otherwise change the basic relationship between the juvenile court and the traffic court. It may be doubted whether a serious constitutional problem is presented in this connection."

Ralph M. Holman, *Oregon's New Juvenile Code*, 39 Or L Rev 305, 313 (1960).

a waiver of an individual case back to juvenile court is comparable to the landowner's ability to seek compensation that the court found to be a sufficient safeguard in *MacPherson*. Not only are the procedural protections in ORS 419C.370 comparable to those in *MacPherson*, but the legislative history of ORS 419C.370 recognized that routine motor vehicle violations can be appropriately resolved in traffic courts and the 1959 legislature provided that some sanctions for those violations would be the same regardless of where the violation was adjudicated.

Defendant advances an additional delegation argument. He contends that ORS 419C.370 lacks the procedural safeguards that were present in the statute delegating authority to promulgate sentencing guidelines: He notes that ORS 419C.370 does not require county juvenile courts to submit their waiver orders to the legislature before they become effective, nor has the legislature approved any blanket waiver orders made pursuant to ORS 419C.370. *See State v. Davilla*, 234 Or App 637, 644-46, 230 P3d 22 (2010), *rev den*, 350 Or 717 (2011) (noting those two procedural protections in upholding the delegation of legislative authority to promulgate sentencing guidelines). While true, those considerations bolstered our conclusion in *Davilla* that the delegation of legislative authority to promulgate sentencing guidelines was constitutional. They did not establish the minimum safeguards necessary for every delegation of legislative authority. Moreover, the legislative oversight that accompanied the delegated authority to draft a complex set of sentencing guidelines would serve little purpose in reviewing the binary choice that ORS 419C.370 gives each county's juvenile court based on its assessment of its administrative capacity to handle traffic cases. To the extent that ORS 419C.370 delegates legislative authority to the county juvenile courts, there are sufficient safeguards to make the delegation constitutional.

Defendant also argues that ORS 419C.370 violates the Due Process Clause, both facially and as applied. His due process argument begins from the premise that *Kent v. United States*, 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966), defines the specific procedures that the Due Process Clause requires before a court can waive a youth from

juvenile court to criminal court.[7] He argues that the blanket waiver authorized by ORS 419C.370(1) fails to provide those protections to each member of the class of juveniles waived to criminal or municipal court. Alternatively, he notes that, even if those procedural due process requirements do not apply to waivers of a class of juveniles, ORS 419C.370(2) permits a juvenile court to waive individual cases back to juvenile court. He contends that subsection (2) is either facially unconstitutional for failing to specify the procedures that apply to that individual waiver decision or unconstitutional as applied in his case.

We begin with defendant's initial argument. Relying primarily on *Kent*, defendant argues that the blanket waiver that ORS 419C.370(1) authorizes results in a class of juvenile cases being transferred to criminal court without the individual hearings and procedural protections for each class member that due process requires.[8] The Court, however, neither considered nor held in *Kent* that procedural due process precludes the legislature (or another branch of government exercising legislative authority) from determining prospectively that a class of juveniles should be tried as adults. The question in *Kent* was what procedural protections are required in a judicial proceeding when deciding whether an individual meets the criteria necessary to be waived from juvenile to criminal court. *See* 383 US at 552. Defendant cites no authority in support of his claim that procedural due process protections apply to legislative rules, and the cases are to the contrary. *See Kyle v. Iowa*, 322

---

[7] As we read *Kent*, that decision reflects an admixture of statutory and constitutional principles. Specifically, in deciding whether the district court erred in *Kent*, the Court applied a District of Columbia "statute read in the context of constitutional principles relating to due process and the assistance of counsel." 383 US at 557. One difficulty in applying *Kent* is that *Kent* does not distinguish the specific procedures that due process requires from those that the District of Columbia statute required. In deciding this case, we assume that due process requires a hearing and a meaningful opportunity to be heard before a court decides in a judicial proceeding to waive an individual youth from juvenile court to criminal court. Even starting from that assumption, we are not persuaded, for the reasons set out below, that the trial court erred in resolving defendant's due process arguments.

[8] Defendant does not argue that he did not come within the terms of the 1998 Washington County Juvenile Court order, an argument that presumably would trigger procedural due process protections. Rather, he argues that a class-based waiver is facially inconsistent with procedural due process requirements.

NW2d 299, 309 (Iowa 1982) (citing what the court described as the "overwhelming majority" of due process cases); *Lane v. Jones*, 626 F2d 1296, 1299 (5th Cir 1980); *Smith v. Sullivan*, 1 F Supp 2d 206, 222-23 (WDNY 1998).

Defendant raises an alternative due process argument. He notes that, even if procedural due process protections do not apply to the legislative decision authorized by ORS 419C.370(1), ORS 419C.370(2) permits juvenile courts to decide whether individual cases should be waived back to juvenile court. Defendant contends that the legislature's failure to set out the procedures that govern that individual waiver decision violates procedural due process. To the extent defendant is making a facial challenge to ORS 419C.370(2), the question is whether subsection (2) is capable of constitutional application. *See State v. Christian*, 354 Or 22, 40, 307 P3d 429 (2013) (stating that standard for facial constitutional challenges). Defendant, however, advances no persuasive reason for concluding that ORS 419C.370(2) is incapable of being applied constitutionally. Nothing in that subsection precludes a juvenile court from applying whatever procedures due process requires in deciding whether to waive a juvenile back to juvenile court.

Defendant may be making an as-applied challenge. As noted above, defense counsel asked the trial court, on the morning that defendant's criminal trial was set to begin, for an individual waiver hearing and a set over so that he could prepare for the individual waiver hearing. The trial court denied that request because it came too late. The court ruled, "I'm not going to do that. This is the time and date set for trial." When defense counsel appeared uncertain as to the court's ruling, the court added, "This is the time and date set for trial, but I'm happy to listen to any evidence you have to support your motion to object to waiver [to criminal court]."

Defendant did not offer any evidence in response to the court's invitation; that is, he did not offer any evidence to show either that his case should not have been waived to criminal court or that his case should be waived back to juvenile court, and the case proceeded to trial on the two charged misdemeanors. To the extent that defendant

challenges that as-applied decision, he identifies no reason why the trial court erred in ruling that his request for a waiver back to juvenile court came too late; *a fortiori*, he has not explained why a ruling that his request was untimely violated due process. Having considered defendant's state and federal constitutional arguments, we affirm the trial court's judgment.

Affirmed.